DONALD C. MACPHERSON, Respondent, v. BUICK MOTOR COMPANY, Appellant.

Negligence — liability of manufacturer of finished product for defects therein — motor vehicles — when manufacturer of automobiles liable to purchaser of car for injuries caused by collapse of wheel which was bought of another manufacturer.

1. If the nature of a finished product placed on the market by a manufacturer to be used without inspection by his customers is such that it is reasonably certain to place life and limb in peril if the product is negligently made, it is then a thing of danger. Its nature gives warning of the consequences to be expected. If to the element of danger there is added knowledge that the thing will be used by persons other than the purchaser, and used without new tests, then, irrespective of contract, the manufacturer of this thing of danger is under a duty to make it carefully. This principle is not limited to poisons, explosives and things of like nature, which in their normal operation are implements of destruction.

2. The defendant, a manufacturer of automobiles, sold an automobile to a retail dealer and the retail dealer resold to the plaintiff. While the plaintiff was in the car it suddenly collapsed and he was thrown out and injured. One of the wheels was made of defective wood, and its spokes crumbled into fragments. The wheel was not made by the defendant, but was bought from another manufacturer. There is evidence, however, that its defects could have been discovered by reasonable inspection and that inspection was omitted. There is no claim that the defendant knew of the defect and willfully concealed it. On examination and analysis of the authorities in this and other states, in the Federal courts and of the English cases, held, that the defendant's liability was not confined to the

immediate purchaser, and that it was not absolved from a duty of inspection because it bought the wheels from a reputable manufacturer. Since it was not merely a dealer, but manufacturer of automobiles, it was responsible for the finished product and was not at liberty to put that product on the market without subjecting the component parts to ordinary and simple tests, and hence is liable for the injuries sustained by plaintiff.

*MacPherson* v. *Buick Motor Co.*, 160 App. Div. 55, affirmed.

(Argued January 24, 1916; decided March 14, 1916.)

APPEAL, by permission, from a judgment of the Appellate Division of the Supreme Court in the third judicial department, entered January 8, 1914, affirming a judgment in favor of plaintiff entered upon a verdict.

The nature of the action and the facts, so far as material, are stated in the opinion.

*William Van Dyke* for appellant. An automobile is not an inherently dangerous article. (*Slater* v. *Thresher Co.*, 97 Minn. 305; *Danforth* v. *Fisher*, 75 N. H. 111; *Cunningham* v. *Castle*, 127 App. Div. 580; *Vincent* v. *Seymour*, 131 App. Div. 200; *Lewis* v. *Snorous*, 59 S. E. Rep. [Ga.] 338; Huddy on Automobile, 15; *Steffen* v. *McNaughton*, 142 Wis. 409; *Jones* v. *Hope*, 47 Wash. 633; *Johnson* v. *Cadillac*, 194 Fed. Rep. 497; 221 Fed. Rep. 801.) An automobile not being an article inherently dangerous, defendant was not liable to a third party in simple negligence — that is, for negligence as contradistinguished from willful or knowing negligence, or in a negligence action as distinguished from an action for deceit, fraud or misrepresentation, to third parties not in contractual relations with it. (*Salisbury* v. *Howe*, 87 N.Y. 132; *Landeman* v. *Russell*, 91 N. E. Rep. 822; *Pa. Steel Co.* v. *Elmore & H. Co.*, 175 Fed. Rep. 176; *Wellington* v. *Downer*, 104 Mass. 64; *Devlin* v. *Smith*, 89 N. Y. 470; *Savings Bank* v. *Ward*, 100 U. S. 195; *Waters-Pierce Oil Co.* v. *Deselms*, 212 U. S. 179; *R. & D. Railroad* v. *Elliott*, 149 U. S. 272; *Penn. Ry. Co.* v. *Hummell*, 167 Fed.

Rep. 89.) A contention that defendant is liable because, though an automobile is not inherently a dangerous thing, if it has a defective wheel, it is an imminently dangerous thing, and if imminently dangerous, the same rule follows as though it were an inherently dangerous thing, cannot be sustained. (*Cadillac M. C. Co.* v. *Johnson*, 221 Fed. Rep. 801; *Titus* v. *R. R. Co.*, 136 Penn. St. 618; *Statler* v. *Ray Mfg. Co.*, 125 App. Div. 71; *Statler* v. *Ray Mfg. Co.*, 195 N. Y. 478; *Marquardt* v. *Engine Co.*, 122 Fed. Rep. 374.)

*Edgar T. Brackett* for respondent. An automobile, propelled by explosive gases, certified and put out, as here conceded, to run at a speed of fifty miles an hour, to be managed by whomsoever may purchase it, is a machine inherently dangerous. (*Texas* v. *Barrett*, 67 Fed. Rep. 214; *Statler* v. *Ray*, 195 N. Y. 478; *Torgeson* v. *Schultz*, 192 N. Y. 156; *Kahner* v. *Otis*, 96 App. Div. 169; *Favo* v. *Remington*, 67 App. Div. 414; *Olds Motor Works* v. *Shaffer*, 145 Ky. 616; *Kuelling* v. *Lean Mfg. Co.*, 183 N. Y. 78; *Cadillac M. C. Co.* v. *Johnson*, 221 Fed. Rep. 801; *Thomas* v. *Winchester*, 6 N. Y. 397.) The defendant was the manufacturer of the machine and subject to all the liabilities of a manufacturer, even if it purchased and did not itself actually put together the defective wheel which caused the plaintiff's injury. (*People ex rel.* v. *Morgan*, 48 App. Div. 395; *Norris* v. *Com.*, 27 Penn. St. 494; *Tidewater, etc.*, v. *United States*, 171 U. S. 210; *Commonwealth* v. *Keystone*, 156 Penn. St. 500; *New Orleans* v. *Le Blanc*, 34 La. Ann. 596; *New Orleans* v. *Ernst*, 35 La. Ann. 746; *State* v. *Wiebert*, 51 La. Ann. 122; *Allen* v. *Smith*, 173 U. S. 389; *Hegeman* v. *W. R. R. Corp.*, 13 N. Y. 9; *Carlson* v. *Phœnix, etc., Co.*, 132 N. Y. 273.)

Cardozo, J. The defendant is a manufacturer of automobiles. It sold an automobile to a retail dealer. The retail dealer resold to the plaintiff. While the plaintiff was in the car, it suddenly collapsed. He was

thrown out and injured. One of the wheels was made of defective wood, and its spokes crumbled into fragments. The wheel was not made by the defendant; it was bought from another manufacturer. There is evidence, however, that its defects could have been discovered by reasonable inspection, and that inspection was omitted. There is no claim that the defendant knew of the defect and willfully concealed it. The case, in other words, is not brought within the rule of *Kuelling* v. *Lean Mfg. Co.* (183 N. Y. 78). The charge is one, not of fraud, but of negligence. The question to be determined is whether the defendant owed a duty of care and vigilance to any one but the immediate purchaser.

The foundations of this branch of the law, at least in this state, were laid in *Thomas* v. *Winchester* (6 N. Y. 397). A poison was falsely labeled. The sale was made to a druggist, who in turn sold to a customer. The customer recovered damages from the seller who affixed the label. " The defendant's negligence," it was said, " put human life in imminent danger." A poison falsely labeled is likely to injure any one who gets it. Because the danger is to be foreseen, there is a duty to avoid the injury. Cases were cited by way of illustration in which manufacturers were not subject to any duty irrespective of contract. The distinction was said to be that their conduct, though negligent, was not likely to result in injury to any one except the purchaser. We are not required to say whether the chance of injury was always as remote as the distinction assumes. Some of the illustrations might be rejected to-day. The *principle* of the distinction is for present purposes the important thing.

*Thomas* v. *Winchester* became quickly a landmark of the law. In the application of its principle there may at times have been uncertainty or even error. There has never in this state been doubt or disavowal of the principle itself. The chief cases are well known, yet to recall

25

some of them will be helpful: *Loop* v. *Litchfield* (42 N. Y. 351) is the earliest. It was the case of a defect in a small balance wheel used on a circular saw. The manufacturer pointed out the defect to the buyer, who wished a cheap article and was ready to assume the risk. The risk can hardly have been an imminent one, for the wheel lasted five years before it broke. In the meanwhile the buyer had made a lease of the machinery. It was held that the manufacturer was not answerable to the lessee. *Loop* v. *Litchfield* was followed in *Losee* v. *Clute* (51 N. Y. 494), the case of the explosion of a steam boiler. That decision has been criticised (Thompson on Negligence, 233; Shearman & Redfield on Negligence [6th ed.], § 117); but it must be confined to its special facts. It was put upon the ground that the risk of injury was too remote. The buyer in that case had not only accepted the boiler, but had tested it. The manufacturer knew that his own test was not the final one. The finality of the test has a bearing on the measure of diligence owing to persons other than the purchaser (Beven, Negligence [3d ed.], pp. 50, 51, 54; Wharton, Negligence [2d ed.], § 134).

These early cases suggest a narrow construction of the rule. Later cases, however, evince a more liberal spirit. First in importance is *Devlin* v. *Smith* (89 N. Y. 470). The defendant, a contractor, built a scaffold for a painter. The painter's servants were injured. The contractor was held liable. He knew that the scaffold, if improperly constructed, was a most dangerous trap. He knew that it was to be used by the workmen. He was building it for that very purpose. Building it for their use, he owed them a duty, irrespective of his contract with their master, to build it with care.

From *Devlin* v. *Smith* we pass over intermediate cases and turn to the latest case in this court in which *Thomas* v. *Winchester* was followed. That case is *Statler* v. *Ray Mfg. Co.* (195 N. Y. 478, 480). The defendant

manufactured a large coffee urn. It was installed in a restaurant. When heated, the urn exploded and injured the plaintiff. We held that the manufacturer was liable. We said that the urn " was of such a character inherently that, when applied to the purposes for which it was designed, it was liable to become a source of great danger to many people if not carefully and properly constructed."

It may be that *Devlin* v. *Smith* and *Statler* v. *Ray Mfg. Co.* have extended the rule of *Thomas* v. *Winchester*. If so, this court is committed to the extension. The defendant argues that things imminently dangerous to life are poisons, explosives, deadly weapons — things whose normal function it is to injure or destroy. But whatever the rule in *Thomas* v. *Winchester* may once have been, it has no longer that restricted meaning. A scaffold (*Devlin* v. *Smith, supra*) is not inherently a destructive instrument. It becomes destructive only if imperfectly constructed. A large coffee urn (*Statler* v. *Ray Mfg. Co., supra*) may have within itself, if negligently made, the potency of danger, yet no one thinks of it as an implement whose normal function is destruction. What is true of the coffee urn is equally true of bottles of aerated water (*Torgeson* v. *Schultz*, 192 N. Y. 156). We have mentioned only cases in this court. But the rule has received a like extension in our courts of intermediate appeal. In *Burke* v. *Ireland* (26 App. Div. 487), in an opinion by Cullen, J., it was applied to a builder who constructed a defective building; in *Kahner* v. *Otis Elevator Co.* (96 App. Div. 169) to the manufacturer of an elevator; in *Davies* v. *Pelham Hod Elevating Co.* (65 Hun, 573; affirmed in this court without opinion, 146 N. Y. 363) to a contractor who furnished a defective rope with knowledge of the purpose for which the rope was to be used. We are not required at this time either to approve or to disapprove the application of the rule that was made in these cases. It is enough that they help to characterize the trend of judicial thought.

Devlin v. Smith was decided in 1882. A year later a very similar case came before the Court of Appeal in England (Heaven v. Pender, L. R. [11 Q. B. D.] 503). We find in the opinion of Brett, M. R., afterwards Lord Esher (p. 510), the same conception of a duty, irrespective of contract, imposed upon the manufacturer by the law itself: "Whenever one person supplies goods, or machinery, or the like, for the purpose of their being used by another person under such circumstances that every one of ordinary sense would, if he thought, recognize at once that unless he used ordinary care and skill with regard to the condition of the thing supplied or the mode of supplying it, there will be danger of injury to the person or property of him for whose use the thing is supplied, and who is to use it, a duty arises to use ordinary care and skill as to the condition or manner of supplying such thing." He then points out that for a neglect of such ordinary care or skill whereby injury happens, the appropriate remedy is an action for negligence. The right to enforce this liability is not to be confined to the immediate buyer. The right, he says, extends to the persons or class of persons for whose use the thing is supplied. It is enough that the goods "would in all probability be used at once    *    *    * before a reasonable opportunity for discovering any defect which might exist," and that the thing supplied is of such a nature "that a neglect of ordinary care or skill as to its condition or the manner of supplying it would probably cause danger to the person or property of the person for whose use it was supplied, and who was about to use it." On the other hand, he would exclude a case "in which the goods are supplied under circumstances in which it would be a chance by whom they would be used or whether they would be used or not, or whether they would be used before there would probably be means of observing any defect," or where the goods are of such a nature that "a want of care or skill as to their condition or the manner of supplying them would not probably

produce danger of injury to person or property." What was said by Lord Esher in that case did not command the full assent of his associates. His opinion has been criticised "as requiring every man to take affirmative precautions to protect his neighbors as well as to refrain from injuring them" (Bohlen, Affirmative Obligations in the Law of Torts, 44 Am. Law Reg. [N. S.] 341). It may not be an accurate exposition of the law of England. Perhaps it may need some qualification even in our own state. Like most attempts at comprehensive definition, it may involve errors of inclusion and of exclusion. But its tests and standards, at least in their underlying principles, with whatever qualification may be called for as they are applied to varying conditions, are the tests and standards of our law.

We hold, then, that the principle of *Thomas* v. *Winchester* is not limited to poisons, explosives, and things of like nature, to things which in their normal operation are implements of destruction. If the nature of a thing is such that it is reasonably certain to place life and limb in peril when negligently made, it is then a thing of danger. Its nature gives warning of the consequences to be expected. If to the element of danger there is added knowledge that the thing will be used by persons other than the purchaser, and used without new tests, then, irrespective of contract, the manufacturer of this thing of danger is under a duty to make it carefully. That is as far as we are required to go for the decision of this case. There must be knowledge of a danger, not merely possible, but probable. It is *possible* to use almost anything in a way that will make it dangerous if defective. That is not enough to charge the manufacturer with a duty independent of his contract. Whether a given thing is dangerous may be sometimes a question for the court and sometimes a question for the jury. There must also be knowledge that in the usual course of events the danger will be shared by others than the buyer. Such knowledge may often be

inferred from the nature of the transaction. But it is possible that even knowledge of the danger and of the use will not always be enough. The proximity or remoteness of the relation is a factor to be considered. We are dealing now with the liability of the manufacturer of the finished product, who puts it on the market to be used without inspection by his customers. If he is negligent, where danger is to be foreseen, a liability will follow. We are not required at this time to say that it is legitimate to go back of the manufacturer of the finished product and hold the manufacturers of the component parts. To make their negligence a cause of imminent danger, an independent cause must often intervene; the manufacturer of the finished product must also fail in *his* duty of inspection. It may be that in those circumstances the negligence of the earlier members of the series is too remote to constitute, as to the ultimate user, an actionable wrong (Beven on Negligence [3d ed.], 50, 51, 54; Wharton on Negligence [2d ed.], § 134; *Leeds* v. *N. Y. Tel. Co.*, 178 N. Y. 118; *Sweet* v. *Perkins*, 196 N. Y. 482; *Hayes* v. *Hyde Park*, 153 Mass. 514, 516). We leave that question open. We shall have to deal with it when it arises. The difficulty which it suggests is not present in this case. There is here no break in the chain of cause and effect. In such circumstances, the presence of a known danger, attendant upon a known use, makes vigilance a duty. We have put aside the notion that the duty to safeguard life and limb, when the consequences of negligence may be foreseen, grows out of contract and nothing else. We have put the source of the obligation where it ought to be. We have put its source in the law.

From this survey of the decisions, there thus emerges a definition of the duty of a manufacturer which enables us to measure this defendant's liability. Beyond all question, the nature of an automobile gives warning of probable danger if its construction is defective. This

automobile was designed to go fifty miles an hour. Unless its wheels were sound and strong, injury was almost certain. It was as much a thing of danger as a defective engine for a railroad. The defendant knew the danger. It knew also that the car would be used by persons other than the buyer. This was apparent from its size; there were seats for three persons. It was apparent also from the fact that the buyer was a dealer in cars, who bought to resell. The maker of this car supplied it for the use of purchasers from the dealer just as plainly as the contractor in *Devlin* v. *Smith* supplied the scaffold for use by the servants of the owner. The dealer was indeed the one person of whom it might be said with some approach to certainty that by him the car would not be used. Yet the defendant would have us say that he was the one person whom it was under a legal duty to protect. The law does not lead us to so inconsequent a conclusion. Precedents drawn from the days of travel by stage coach do not fit the conditions of travel to-day. The principle that the danger must be imminent does not change, but the things subject to the principle do change. They are whatever the needs of life in a developing civilization require them to be.

In reaching this conclusion, we do not ignore the decisions to the contrary in other jurisdictions. It was held in *Cadillac M. C. Co.* v. *Johnson* (221 Fed. Rep. 801) that an automobile is not within the rule of *Thomas* v. *Winchester*. There was, however, a vigorous dissent. Opposed to that decision is one of the Court of Appeals of Kentucky (*Olds Motor Works* v. *Shaffer*, 145 Ky. 616). The earlier cases are summarized by Judge Sanborn in *Huset* v. *J. I. Case Threshing Machine Co.* (120 Fed. Rep. 865). Some of them, at first sight inconsistent with our conclusion, may be reconciled upon the ground that the negligence was too remote, and that another cause had intervened. But even when they cannot be reconciled, the difference is rather in the applica-

tion of the principle than in the principle itself. Judge Sanborn says, for example, that the contractor who builds a bridge, or the manufacturer who builds a car, cannot ordinarily foresee injury to other persons than the owner as the probable result (120 Fed. Rep. 865, at p. 867). We take a different view. We think that injury to others is to be foreseen not merely as a possible, but as an almost inevitable result. (See the trenchant criticism in Bohlen, *supra*, at p. 351). Indeed, Judge Sanborn concedes that his view is not to be reconciled with our decision in *Devlin* v. *Smith* (*supra*). The doctrine of that decision has now become the settled law of this state, and we have no desire to depart from it.

In England the limits of the rule are still unsettled. *Winterbottom* v. *Wright* (10 M. & W. 109) is often cited. The defendant undertook to provide a mail coach to carry the mail bags. The coach broke down from latent defects in its construction. The defendant, however, was not the manufacturer. The court held that he was not liable for injuries to a passenger. The case was decided on a demurrer to the declaration. Lord Esher points out in *Heaven* v. *Pender* (*supra*, at p. 513) that the form of the declaration was subject to criticism. It did not fairly suggest the existence of a duty aside from the special contract which was the plaintiff's main reliance. (See the criticism of *Winterbottom* v. *Wright,* in Bohlen, *supra*, at pp. 281, 283). At all events, in *Heaven* v. *Pender* (*supra*) the defendant, a dock owner, who put up a staging outside a ship, was held liable to the servants of the shipowner. In *Elliott* v. *Hall* (15 Q. B. D. 315) the defendant sent out a defective truck laden with goods which he had sold. The buyer's servants unloaded it, and were injured because of the defects. It was held that the defendant was under a duty "not to be guilty of negligence with regard to the state and condition of the truck." There seems to have been a

return to the doctrine of *Winterbottom* v. *Wright* in *Earl* v. *Lubbock* (L. R. [1905] 1 K. B. 253). In that case, however, as in the earlier one, the defendant was not the manufacturer. He had merely made a contract to keep the van in repair. A later case (*White* v. *Steadman*, L. R. [1913], 3 K. B. 340, 348) emphasizes that element. A livery stable keeper who sent out a vicious horse was held liable not merely to his customer but also to another occupant of the carriage, and *Thomas* v. *Winchester* was cited and followed (*White* v. *Steadman*, *supra*, at pp. 348, 349). It was again cited and followed in *Dominion Natural Gas Co.* v. *Collins* (L. R. [1909] A. C. 640, 646). From these cases a consistent principle is with difficulty extracted. The English courts, however, agree with ours in holding that one who invites another to make use of an appliance is bound to the exercise of reasonable care (*Caledonian Ry. Co.* v. *Mulholland*, L. R. [1898] A. C. 216, 227; *Indermaur* v. *Dames*, L. R. [1 C. P.] 274). That at bottom is the underlying principle of *Devlin* v. *Smith*. The contractor who builds the scaffold invites the owner's workmen to use it. The manufacturer who sells the automobile to the retail dealer invites the dealer's customers to use it. The invitation is addressed in the one case to determinate persons and in the other to an indeterminate class, but in each case it is equally plain, and in each its consequences must be the same.

There is nothing anomalous in a rule which imposes upon A, who has contracted with B, a duty to C and D and others according as he knows or does not know that the subject-matter of the contract is intended for their use. We may find an analogy in the law which measures the liability of landlords. If A leases to B a tumbledown house he is not liable, in the absence of fraud, to B's guests who enter it and are injured. This is because B is then under the duty to repair it, the lessor has the right to suppose that he will fulfill that duty, and, if he

omits to do so, his guests must look to him (Bohlen, *supra,* at p. 276). But if A leases a building to be used by the lessee at once as a place of public entertainment, the rule is different. There injury to persons other than the lessee is to be foreseen, and foresight of the conse quences involves the creation of a duty (*Junkermann* v. *Tilyou R. Co.,* 213 N. Y. 404, and cases there cited).

In this view of the defendant's liability there is nothing inconsistent with the theory of liability on which the case was tried. It is true that the court told the jury that "an automobile is not an inherently dangerous vehicle." The meaning, however, is made plain by the context. The meaning is that danger is not to be expected when the vehicle is well constructed. The court left it to the jury to say whether the defendant ought to have foreseen that the car, if negligently constructed, would become "imminently dangerous." Subtle distinctions are drawn by the defendant between things inherently dangerous and things imminently dangerous, but the case does not turn upon these verbal niceties. If danger was to be expected as reasonably certain, there was a duty of vigilance, and this whether you call the danger inherent or imminent. In varying forms that thought was put before the jury. We do not say that the court would not have been justified in ruling as a matter of law that the car was a dangerous thing. If there was any error, it was none of which the defendant can complain.

We think the defendant was not absolved from a duty of inspection because it bought the wheels from a reputable manufacturer. It was not merely a dealer in automobiles. It was a manufacturer of automobiles. It was responsible for the finished product. It was not at liberty to put the finished product on the market without subjecting the component parts to ordinary and simple tests (*Richmond & Danville R. R. Co.* v. *Elliott,* 149 U. S. 266, 272). Under the charge of the trial judge nothing more was

required of it.   The obligation to inspect must vary with the nature of the thing to be inspected.   The more probable the danger, the greater the need of caution.   There is little analogy between this case and *Carlson* v. *Phœnix Bridge Co.* (132 N. Y. 273), where the defendant bought a tool for a servant's use.   The making of tools was not the business in which the master was engaged.   Reliance on the skill of the manufacturer was proper and almost inevitable.   But that is not the defendant's situation.   Both by its relation to the work and by the nature of its business, it is charged with a stricter duty.

Other rulings complained of have been considered, but no error has been found in them.

.The judgment should be affirmed with costs.

Willard Bartlett, Ch. J. (dissenting).   The plaintiff was injured in consequence of the collapse of a wheel of an automobile manufactured by the defendant corporation which sold it to a firm of automobile dealers in Schenectady, who in turn sold the car to the plaintiff. The wheel was purchased by the Buick Motor Company, ready made, from the Imperial Wheel Company of Flint, Michigan, a reputable manufacturer of automobile wheels which had furnished the defendant with eighty thousand wheels, none of which had proved to be made of defective wood prior to the accident in the present case.   The defendant relied upon the wheel manufacturer to make all necessary tests as to the strength of the material therein and made no such tests itself.   The present suit is an action for negligence brought by the subvendee of the motor car against the manufacturer as the original vendor.   The evidence warranted a finding by the jury that the wheel which collapsed was defective when it left the hands of the defendant.   The automobile was being prudently operated at the time of the accident and was moving at a speed of only eight miles an hour.   There was

no allegation or proof of any actual knowledge of the defect on the part of the defendant or any suggestion that any element of fraud or deceit or misrepresentation. entered into the sale.

The theory upon which the case was submitted to the jury by the learned judge who presided at the trial was that, although an automobile is not an inherently dangerous vehicle, it may become such if equipped with a weak wheel; and that if the motor car in question, when it was put upon the market was in itself inherently dangerous by reason of its being equipped with a weak wheel, the defendant was chargeable with a knowledge of the defect so far as it might be discovered by a reasonable inspection and the application of reasonable tests. This liability, it was further held, was not limited to the original vendee, but extended to a subvendee like the plaintiff, who was not a party to the original contract of sale.

I think that these rulings, which have been approved by the Appellate Division, extend the liability of the vendor of a manufactured article further than any case which has yet received the sanction of this court. . It has heretofore been held in this state that the liability of the vendor of a manufactured article for negligence arising out of the existence of defects therein does not extend to strangers injured in consequence of such defects but is confined to the immediate vendee. The exceptions to this general rule which have thus far been recognized in New York are cases in which the article sold was of such a character that danger to life or limb was involved in the ordinary use thereof ; in other words, where the article sold was inherently dangerous. As has already been pointed out, the learned trial judge instructed the jury that an automobile is not an inherently dangerous vehicle.

The late Chief Justice Cooley of Michigan, one of the most learned and accurate of American law writers,

states the general rule thus: "The general rule is that a contractor, manufacturer, vendor or furnisher of an article is not liable to third parties who have no contractual relations with him for negligence in the construction, manufacture or sale of such article." (2 Cooley on Torts [3d ed.], 1486.)

The leading English authority in support of this rule, to which all the later cases on the same subject refer, is *Winterbottom* v. *Wright* (10 Meeson & Welsby, 109), which was an action by the driver of a stage coach against a contractor who had agreed with the postmaster-general to provide and keep the vehicle in repair for the purpose of conveying the royal mail over a prescribed route. The coach broke down and upset, injuring the driver, who sought to recover against the contractor on account of its defective construction. The Court of Exchequer denied him any right of recovery on the ground that there was no privity of contract between the parties, the agreement having been made with the postmaster-general alone. "If the plaintiff can sue," said Lord Abinger, the Chief Baron, "every passenger or even any person passing along the road, who was injured by the upsetting of the coach, might bring a similar action. Unless we confine the operation of such contracts as this to the parties who enter into them, the most absurd and outrageous consequences, to which I can see no limit, would ensue."

The doctrine of that decision was recognized as the law of this state by the leading New York case of *Thomas* v. *Winchester* (6 N. Y. 397, 408), which, however, involved an exception to the general rule. There the defendant, who was a dealer in medicines, sold to a druggist a quantity of belladonna, which is a deadly poison, negligently labeled as extract of dandelion. The druggist in good faith used the poison in filling a prescription calling for the harmless dandelion extract and the plaintiff for whom the prescription was put up was poisoned by the

belladonna. This court held that the original vendor · was liable for the injuries suffered by the patient. Chief Judge RUGGLES, who delivered the opinion of the court, distinguished between an act of negligence imminently dangerous to the lives of others and one that is not so, saying: "If A. build a wagon and sell it to B., who sells it to C. and C. hires it to D., who in consequence of the gross negligence of A. in building the wagon is overturned and injured, D. cannot recover damages against A., the builder. A.'s obligation to build the wagon faithfully, arises solely out of his contract with B. The public have nothing to do with it. * * * So, for the same reason, if a horse be defectively shod by a smith, and a person hiring the horse from the owner is thrown and injured in consequence of the smith's negligence in shoeing; the smith is not liable for the injury."

In *Torgeson* v. *Schultz* (192 N. Y. 156, 159) the defendant was the vendor of bottles of aerated water which were charged under high pressure and likely to explode unless used with precaution when exposed to sudden changes of temperature. The plaintiff, who was a servant of the purchaser, was injured by the explosion of one of these bottles. There was evidence tending to show that it had not been properly tested in order to insure users against such accidents. We held that the defendant corporation was liable notwithstanding the absence of any contract relation between it and the plaintiff "under the doctrine of *Thomas* v. *Winchester* (*supra*), and similar cases based upon the duty of the vendor of an article dangerous in its nature, or likely to become so in the course of the ordinary usage to be contemplated by the vendor, either to exercise due care to warn users of the danger or to take reasonable care to prevent the article sold from proving dangerous when subjected only to customary usage." The character of the exception to the general rule limiting liability for negligence to the original parties to the contract of sale, was still more clearly stated by Judge

Hiscock, writing for the court in *Statler* v. *Ray Manu-facturing Co.* (195 N. Y. 478, 482), where he said that "in the case of an article of an inherently dangerous nature, a manufacturer may become liable for a negligent con-struction which, when added to the inherent character of the appliance, makes it imminently dangerous, and causes or contributes to a resulting injury not necessarily inci-dent to the use of such an article if properly constructed, but naturally following from a defective construction." In that case the injuries were inflicted by the explosion of a battery of steam-driven coffee urns, constituting an appliance liable to become dangerous in the course of ordinary usage.

The case of *Devlin* v. *Smith* (89 N. Y. 470) is cited as an authority in conflict with the view that the liability of the manufacturer and vendor extends to third parties only when the article manufactured and sold is inherently dangerous. In that case the builder of a scaffold ninety feet high which was erected for the purpose of enabling painters to stand upon it, was held to be liable to the administratrix of a painter who fell therefrom and was killed, being at the time in the employ of the person for whom the scaffold was built. It is said that the scaffold if properly constructed was not inherently dangerous; and hence that this decision affirms the existence of liabil-ity in the case of an article not dangerous in itself but made so only in consequence of negligent construction. Whatever logical force there may be in this view it seems to me clear from the language of Judge Rapallo, who wrote the opinion of the court, that the scaffold was deemed to be an inherently dangerous structure; and that the case was decided as it was because the court entertained that view. Otherwise he would hardly have said, as he did, that the circumstances seemed to bring the case fairly within the principle of *Thomas* v. *Winchester*.

I do not see how we can uphold the judgment in the

present case without overruling what has been so often said by this court and other courts of like authority in reference to the absence of any liability for negligence on the part of the original vendor of an ordinary carriage to any one except his immediate vendee.　The absence of such liability was the very point actually decided in the English case of *Winterbottom* v. *Wright (supra)*, and the illustration quoted from the opinion of Chief Judge Ruggles in *Thomas* v. *Winchester (supra)* assumes that the law on the subject was so plain that the statement would be accepted almost as a matter of course.　In the case at bar the defective wheel on an automobile moving only eight miles an hour was not any more dangerous to the occupants of the car than a similarly defective wheel would be to the occupants of a carriage drawn by a horse at the same speed; and yet unless the courts have been all wrong on this question up to the present time there would be no liability to strangers to the original sale in the case of the horse-drawn carriage.

The rule upon which, in my judgment, the determination of this case depends, and the recognized exceptions thereto, were discussed by Circuit Judge Sanborn of the United States Circuit Court of Appeals in the Eighth Circuit, in *Huset* v. *J. I. Case Threshing Machine Co.* (120 Fed. Rep. 865) in an opinion which reviews all the leading American and English decisions on the subject up to the time when it was rendered (1903).　I have already discussed the leading New York cases, but as to the rest I feel that I can add nothing to the learning of that opinion or the cogency of its reasoning.　I have examined the cases to which Judge Sanborn refers, but if I were to discuss them at length I should be forced merely to paraphrase his language, as a study of the authorities he cites has led me to the same conclusion; and the repetition of what has already been so well said would contribute nothing to the advantage of the bench, the bar or the individual litigants whose case is before us.

A few cases decided since his opinion was written, however, may be noticed. In *Earl* v. *Lubbock* (L. R. 1905 [1 K. B. Div.] 253) the Court of Appeal in 1904 considered and approved the propositions of law laid down by the Court of Exchequer in *Winterbottom* v. *Wright* (*supra*), declaring that the decision in that case, since the year 1842, had stood the test of repeated discussion. The master of the rolls approved the principles laid down by Lord Abinger as based upon sound reasoning; and all the members of the court agreed that his decision was a controlling authority which must be followed. That the Federal courts still adhere to the general rule, as I have stated it, appears by the decision of the Circuit Court of Appeals in the Second Circuit, in March, 1915, in the case of *Cadillac Motor Car Co.* v. *Johnson* (221 Fed. Rep. 801). That case, like this, was an action by a subvendee against a manufacturer of automobiles for negligence in failing to discover that one of its wheels was defective, the court holding that such an action could not be maintained. It is true there was a dissenting opinion in that case, but it was based chiefly upon the proposition that rules applicable to stage coaches are archaic when applied to automobiles and that if the law did not afford a remedy to strangers to the contract the law should be changed. It this be true, the change should be effected by the legislature and not by the courts. A perusal of the opinion in that case and in the *Huset* case will disclose how uniformly the courts throughout this country have adhered to the rule and how consistently they have refused to broaden the scope of the exceptions. I think we should adhere to it in the case at bar and, therefore, I vote for a reversal of this judgment.

Hiscock, Chase and Cuddeback, JJ., concur with Cardozo, J., and Hogan, J., concurs in result; Willard Bartlett, Ch. J., reads dissenting opinion; Pound, J., not voting.

Judgment affirmed.