Robert E. DAVIS, Plaintiff,

v.

HENDERLONG LUMBER COMPANY, a Corporation, Arnold Henderlong, and Aafco Heating Company, Inc., a Corporation, Defendants.

Civ. No. 2955.

United States District Court
N. D. Indiana,
Hammond Division.

July 9, 1963.

Sherwin J. Malkin and Seymour Velk, Chicago, Ill., for plaintiff.

Daniel F. Kelly, Tinkham, Beckman, Kelly & Singleton, Hammond, Ind., for the defendants Henderlong Lumber Co., Inc. and Arnold Henderlong.

James J. Richards and George H. Dragus, Hammond, Ind., for defendant Aafco Heating Co., Inc.

BEAMER, District Judge.

This suit was originally filed December 9, 1960, against Henderlong Lumber Company and Arnold Henderlong. Plaintiff subsequently filed an amended complaint in two counts, adding Aafco Heating Company as co-defendant.

The amended complaint alleges that plaintiff was formerly employed by the Stanray Corporation as a chemist. While so employed, he sustained injuries on April 7, 1960, from the inhalation of toxic fumes which occurred because of the allegedly improper and inadequate installation of a chemical fume hood and exhaust apparatus in a newly-constructed chemical laboratory. Henderlong Lumber Company and Arnold Henderlong were under contract with Stanray to construct the laboratory, and Henderlong subsequently hired Aafco Heating Company as subcontractor to install the chemical fume hood and exhaust apparatus.

Plaintiff alleges in the complaint that defendants knew, or in the exercise of reasonable care, should have known that said chemical fume hood and exhaust apparatus was insufficient and inadequate for the use required of it, and would cause injury to persons working in and around the vicinity thereof. It is alleged that defendants disregarded their duty of due care and caused the apparatus to be constructed and installed in such a manner as to be insufficient and inadequate for the use required of it.

It is undisputed that the installation of the chemical fume hood and exhaust apparatus was completed and accepted by Stanray Corporation prior to the date of the injury. It is also undisputed that the Stanray Corporation actually took possession and occupied the laboratory prior to the date of the alleged injury to Plaintiff.

Upon the filing of the motions for summary judgments, defendants asserted that all work pertaining to the construction and installation of the exhaust apparatus was done according to the plans and specifications furnished by the contractee, Stanray Corporation. Therefore, argue defendants, they cannot be held liable for injuries to third persons where the work performed complied with the plans and specifications of Plaintiff's employer, and was accepted by Stanray prior to the injury.

Plaintiff, in his briefs on file, contends that one Douglas F. Haley, a licensed architect, hired by Henderlong Lumber Co., prepared the drawings for the exhaust apparatus; that a change was made from the original plans in the construction and installation of the hood and exhaust in that the hood was enlarged and the exhaust moved to another wall so that it was no longer in a vertical position over the hood; that this change was made by Aafco Heating Co., without prior approval of either Henderlong Lumber Co., or the architect who prepared the plans and blueprints; that the effect of this change was to markedly reduce the capacity of the exhaust as originally designed and provided for in the plans; that Aafco Heating Company made the variance in plans on the verbal instructions of one Theodore J. Pilet, an employee of Stanray Corporation.

In short, Plaintiff takes the position that factual issues are posed which are not proper for summary judgment since Pilet had no authority to order any changes and Defendants had no right to rely upon verbal instructions contravening such plans. Plaintiff argues that as experienced contractors, Defendants knew the nature and purpose of the ap-

paratus which they were constructing and knew or should have known that such apparatus as constructed was wholly insufficient to exhaust the toxic chemical fumes.

The uncontradicted facts as shown by the depositions on file negate Plaintiff's conclusions and unequivocally establish that:

1. Theodore J. Pilet is employed by Stanray Corporation as a chemical engineer with the title of research manager.

2. As research manager, Pilet was ‘in charge of the construction of the chemical laboratory for Stanray Corporation.

3. Pilet provided the building layout to Henderlong Lumber Co., who had detailed architectural prints drafted for the shell of the building.

4. Pilet prepared the plans and specifications for the chemical fume hood and exhaust apparatus, then had Douglas Haley, a licensed architect hired by Stanray Corporation merely recopy the plans since the signature of an architect was needed on the plans.

5. All matters of installation were referred to Aafco Heating Co.

6. Pilet specifically directed the modification of the vertical duct and relocation of the chemical fume hood from the original submitted specifications during the installation of the apparatus.

7. The specifications for the apparatus did not amplify or specifically detail out the purpose which the exhaust fan was to serve.

8. Pilet never informed either Henderlong Lumber Company, Arnold Henderlong, or Aafco Heating Co. of the purpose of the hood and exhaust.

9. Stanray Corporation expected the contractors to install the equipment according to the specifications submitted by Pilet.

10. Pilet specified the size and capacity of the exhaust fan to be used in the hood vent.

11. The chemical fume hood and exhaust apparatus was completed in accordance with the specifications submitted by Pilet.

12. The contractors were not instructed or expected to test the ‘unit to determine if it was effective in exhausting noxious materials.

13. The contractors were never informed that the apparatus was constructed to minimize the egress of noxious materials into the laboratory.

14. The laboratory and chemical fume hood and exhaust apparatus were completed and accepted by Stanray Corporation on January 15, 1960.

15. Plaintiff, as laboratory manager, was assigned the duty by Stanray Corporation of checking out the equipment in the laboratory, including the exhaust hood and fan, to determine its effectiveness.

16. Patrick Murphy, the foreman in charge of installation for Aafco Heating Company, had a formal education consisting of a high school diploma and dental technician school. Mr. Murphy has 12 years' experience as a sheet metal worker, his primary occupation, with no previous experience in the installation of equipment in chemical laboratories.

17. Arnold Henderlong, President of Henderlong Lumber Company, is engaged in the retail lumber business and as a general contractor. Mr. Henderlong had two and a half years of general business courses in college with 22 years' experience in general contracting and supervision of

construction projects, but no experience in the manufacture or use of chemicals.

In brief, the undisputed facts show that Defendants constructed the laboratory and installed the exhaust apparatus according to the plans and specifications furnished by Pilet, the agent of Stanray Corporation, and the work performed was accepted as having complied with said plans. Our next inquiry is whether or not Defendants are entitled to summary judgment as a matter of law under the applicable rules of liability.

Defendants rely upon Travis v. Rochester Bridge Co., 188 Ind. 79, 122 N.E. 1 (1919), as controlling under the facts involved in the instant case. However, Plaintiff asserts that the Travis case has been overruled by Holland Furnace Co. v. Nauracaj, 105 Ind.App. 574, 14 N.E.2d 339 (1938), and Holland recognized as the modern law in Indiana by Elliott v. General Motors Corporation, 296 F.2d 125 (CA7, 1961); and McCloud v. Leavitt Corporation, 79 F.Supp. 286 (E.D.Ill.1948).

In Travis, the Plaintiff was killed by the falling of a bridge constructed by defendant. The plans and specifications for the bridge were submitted by the County, and the contractor constructed accordingly. The bridge collapsed five years later. Said the Indiana Supreme Court:

"Many cases have been cited by appellant involving the liability of manufacturers of machinery, conveyances, and other articles sold in the regular course of trade, for injuries resulting to persons not parties to the contract on account of defects in the construction of the article sold. The relations involved in such cases are analogous to those in the case at bar, *but they are not identical; and the rules of law which apply, while similar in many respects, are not the same.* (Emphasis supplied by Court)

" * * * In the class of cases to which the one at bar belongs, the work is generally done by the contractor in accordance with plans furnished by the party letting the contract or under his direction and supervision, and the work is subject to inspection before acceptance. In the other class of cases to which reference is made, the machinery or other article manufactured is made according to the plans of the manufacturer and under his direction and subject to his inspection before sale. The differences pointed out between the classes of cases under consideration furnishes a reason for holding that the liability of an independent contractor toward third persons, not parties to the contract, terminates with the completion of the work and the acceptance of the contract, while a similar rule, but somewhat modified, applied to manufacturers selling in the ordinary course of trade.

"As affecting the liability of a contractor, the acceptance of the work by the other party to the contract operates as the intervention of an independent human agency which breaks the chain of causation so as to preclude a third party from asserting or relying on any duty on the part of the contractor to use care for his safety in the construction of the work." At 122 N.E. 1, 2.

Asserting that the Travis case has been overruled, Plaintiff refers to Holland Furnace Co. v. Nauracaj, 105 Ind.App. 574, 14 N.E.2d 339 (1938). In Holland, the defendant negligently installed one of its own furnaces causing a fire. Defendant claimed no cause of action could arise in favor of one not in privity to the contract of installation, and that acceptance by the employer of the work completed discharges the contractor from liability to third persons for injuries received as a result of defective construction or installation. In reply, the Court stated:

" * * * There is, however, another recognized exception, viz.: A contractor continues liable where the work is turned over by him in a

manner so negligently defective as to be imminently dangerous to third persons. (citations.)

"We also recognize this latter exception to the general rule to have some limitations when applied to public contracts, as was pointed out by our Supreme Court in the case of Travis, Adm'x v. Rochester Bridge Co., supra; but such limitations have no application here, as the question does not involve a public contract." At 14 N.E.2d 339, 342–343.

The Indiana Appellate Court dispensed with the requirement of privity in permitting third persons to sue a contractor who turns over work which is so negligently defective as to be imminently dangerous to those who may come in contact with the instrumentality. However, a significant fact in the Holland case appears in that the Defendant had installed its own product in accordance with its own plans and specifications. And the Court cites approvingly from Travis the rule that if the thing sold or constructed be not imminently dangerous to human life, but may become such by reason of some concealed defect, then a liability may arise against such vendor or constructor if he knew of the defect and fraudulently concealed it. 14 N.E.2d 339, 342.

Plaintiff also contends that Travis was further repudiated by McCloud v. Leavitt Corporation, 79 F.Supp. 286 (E.D.Ill. 1948) and Elliott v. General Motors Corporation, 296 F.2d 125 (C.A.7, 1961).

However, in both McCloud and Elliott, the defendants were the manufacturers of the defective or dangerous instrumentality, constructed according to their own plans and specifications. Both defendants relied upon lack of privity. And both courts held that a contractor or manufacturer continues liable where the work or product turned over is so negligently defective as to be imminently dangerous to third persons, regardless of privity. To this extent, Indiana is in accord with McPherson v. Buick Motor Co., 217 N.Y. 382, 111 N.E. 1050 (1916),

as evidenced by the Holland case and Coca Cola Bottling Works of Evansville, Inc. v. Williams, 111 Ind.App. 502, 37 N.E.2d 702 (1941).

But in none of the above cases were the courts confronted with the situation in the Travis case and the instant case, to wit: the construction and installation of work in accordance with plans and specifications submitted by the contractee, and accepted by the contractee as having complied with those plans and specifications.

■ I agree that the above cases abolish a contractual privity requirement in Indiana, in products liability cases. However, despite the modern extension of the McPherson v. Buick rule, one important limitation still exists with respect to the liability of independent contractors.

■■ In Ryan v. Feeney & Sheehan Mfg. Co., 239 N.Y. 43, 145 N.E. 321 (1924), a building contractor who complied with plans and specifications furnished to him in constructing a canopy which fell after heavy snowfall because the supporting braces had insufficient spread or were fastened at too low an angle with the base, was held not liable for the death of the person upon whom the canopy fell. The court said:

"The architect and the government officers employed upon the work were the ones who knew or should have known about the strength of iron supports and braces and the proper angles at which they should be placed. It is conceded that the defendant fully complied with the plans and specifications as it was required to do. The canopy fell down because the supporting irons or braces did not have sufficient spread or were fastened at too low an angle with the base. *How was an ordinary contractor or builder to know this?* (Emphasis supplied by Court). The matter was for the engineers and architects to determine and design. The builder's experience might have suggested that another construction would

have been better but it was not its judgment on these matters which was to be taken, and it was justified in relying upon the experience and skill of the architect and supervising engineer." 145 N.E. 32⁻.

"* * * This is the rule to be applied. A builder or contractor is justified in relying upon the plans and specifications which he has contracted to follow, unless they are so apparently defective that an ordinary builder of ordinary prudence would be put upon notice that the work was dangerous and likely to cause injury." 145 N.E. 321, 322.

The rule pronounced in the Ryan case, by the same court which earlier had decided McPherson v. Buick, supra, was followed and cited approvingly by Judge Learned Hand in Person v. Cauldwell-Wingate Co., 2 Cir., 187 F.2d 832, cert. den. 341 U.S. 936, 71 S.Ct. 855, 95 L.Ed. 544 (1951).

Thus, it was stated in Russell v. Arthur Whitcomb, Inc., 100 N.H. 171, 121 A.2d 781 (1956), that one important limitation on the rule placing building contractors on the same footing as sellers of goods, and holding them to the general standard of reasonable care for the protection of anyone who may foreseeably be endangered by their negligence even after acceptance of the work, is that *the contractor is not liable if he has merely carried out the plans, specifications, and directions given him, since in that case the responsibility is assumed by the employer, at least when the plans are not so obviously dangerous that no reasonable man would follow them.* (Emphasis supplied by court).

Insofar as Travis v. Rochester Bridge, 188 Ind. 79, 122 N.E. 1 (1919), is consistent with this rule, it is the law of Indiana, and the generally-accepted rule in other jurisdictions governing that question in the instant case. See Johnson v. San Leandro, 179 Cal.App.2d 794, 4 Cal.Rptr. 404; Tipton v. Clower, 67 N.M. 388, 356 P.2d 46; Garden of the Gods Village v. Hellman, 133 Colo. 286, 295 P.2d 597; Gordon Creek Tree Farms

Inc. v. Layne, 230 Or. 204, 358 P.2d 1062, 368 P.2d 737; Leonard v. Abbott, Tex. Civ.App., 357 S.W.2d 778; Tooker v. Lonky, 106 N.J.L. 110, 147 A. 445; Amann v. City of Tacoma, 170 Wash. 296, 16 P.2d 601. See also 58 A.L.R.2d 865; 57 C.J.S. Master and Servant § 589; Rst. of Torts 404, Comment (a).

Having determined the applicable rule of liability, the final inquiry is whether or not the plans and specifications for the chemical fume hood and exhaust apparatus, with the subsequent modification made by Theodore J. Pilet, were so obviously or glaringly dangerous that a contractor with average skill and ordinary prudence would not have attempted the construction and installation according to the plans and directions of Pilet.

█ Summary judgment is not a substitute for trial but is rather a judicial search for determining whether genuine issues exist as to material facts. Homan Mfg. Co. v. Long, 242 F.2d 645 (C.A.7th, 1957).

█ The facts are clear and undisputed. The defendants had no prior experience with the construction of chemical laboratories and equipment, or with the manufacture, or use of chemicals. At no time were the defendants informed of the purpose of the chemical fume hood and exhaust apparatus. The defendants completed their contracts in the manner expected of them. Stanray Corporation still felt that the exhaust apparatus, with the subsequent modification ordered by their own chemical engineer and supervisor of the laboratory project should have been adequate.

As stated in Ryan v. Feeney & Sheehan Mfg. Co., supra,

"* * * The canopy fell down because the supporting irons or braces did not have sufficient spread or were fastened at too low an angle with the base. *How was an ordinary contractor or builder to know this? The matter was for the engineers and architects to determine and design. The builder's experience might have suggested that an-*

*other construction would have been better but it was not its judgment on these matters which was to be taken, and it was justified in relying upon the experience and skill of the architect and supervising engineer."* Id. (Emphasis supplied by Court.)

As mentioned above, the contractors in the instant case had neither the educational background or experience to question the plans submitted or modifications ordered by the supervising engineer, a chemist, whose judgment on those matters could justifiably be taken.

Ordinarily summary judgment is improper in negligence actions or cases where the reasonable man standard must be applied to conflicting testimony. But just as there are some cases in which the court is justified in directing a verdict or granting judgment notwithstanding the verdict in a negligence case, Herdman v. Pennsylvania R.R., 352 U.S. 518, 77 S. Ct. 455, 1 L.Ed.2d 508 (1957), so also does Rule 56 dictate the granting of summary judgment where there is no genuine issue of a material fact. Wilkinson v. Powell, 149 F.2d 335 (C.A.5th, 1945); Surkin v. Charteris, 197 F.2d 77 (C.A.5th, 1952); Warner v. Lieberman, 154 F.Supp. 362 (D.C.Wis.1957).

Plaintiff has attempted to create factual issues by the conclusions drawn in the answers to requests for admissions of fact and summaries of facts contained in his briefs of law. But transparent contentions, mere pleading allegations, and self-serving unverified statements of facts, as opposed to the movant's controverting evidentiary materials cannot defeat a motion for summary judgment. Proctor v. Sagamore Big Game Club, 265 F.2d 196 (C.A.3rd, 1959); cert. den. 361 U.S. 831, 80 S.Ct. 81, 4 L.Ed.2d 73; Schreffler v. Bowles, 153 F.2d 1 (C.A. 10th, 1946); cert. den., 328 U.S. 870, 66 S.Ct. 1366, 90 L.Ed. 1640; Repsold v. New York Life Ins. Co., 216 F.2d 479 (C.A.7th, 1954); Lane v. Greyhound Corp., 13 F.R.D. 178 (D.C.Ky.1952).

The whole purpose of summary judgment procedure would be defeated if a case could be forced to trial by a mere assertion that an issue exists without any showing of evidence. See Boyce v. Merchants Fire Ins. Co., 204 F.Supp. 311 (D.C.Conn.1962).

Having determined that the defendants are entitled to summary judgment as a matter of law, questions pertaining to the liability of the general contractor for the alleged negligence of a subcontractor are now moot.