HOBSON, ADMX. OF THE ESTATE OF HOBSON *v.* BECK WELDING AND MFG., INC.

[No. 20,734. Filed March 21, 1969. Rehearing denied April 17, 1969. Transfer denied July 23, 1969.]

*James E. Bath*, of Indianapolis, for appellant.

*Oscar Strom, Angelo A. Buoscio*, of Gary, *D. Russell Bontrager*, of Elkhart, and *Strom and Whitted*, of counsel, of Gary, for appellee.

PFAFF, C. J.—This is an action for damages for wrongful death brought by the appellant, Joyce Hobson, Administratrix of the Estate of Damon Hobson, deceased, against the appellee, Beck Welding and Mfg., Inc., arising out of an accident that occurred in the city of Indianapolis, Indiana, on February 9, 1964, at about six o'clock in the evening.

Damon Hobson, husband of the appellant, was employed by the H. Coster Electric Car Sales & Service, Indianapolis, Indiana, as a part-time driver of a semi-trailer truck unit hauling electric golf carts to and from golf courses located in Indiana. The trailer of this truck unit was specially constructed by the appellee for Hobson's employer. The trailer had two levels, the upper level being supported by upright steel posts and cross braces between said posts. On the date in question, as Hobson attempted to board the truck, by grasping the steel braces and hoisting himself up onto the lower lever, a cross brace broke and caused him to fall backward, striking his head. Said injuries were fatal.

Issues were formed by appellant's complaint alleging that the appellee had negligently made the welds which had fractured, thus causing said accident, and appellee's answer thereto.

Trial was had by jury and a verdict returned for the appellee. Judgment was entered thereon on March 22, 1966, said judgment reading as follows:

"IT IS THEREFORE ordered, adjudged and decreed by the Court that the plaintiff take nothing by her action on her complaint.

"It is further ordered and decreed by the Court that the costs herein to be taxed to the plaintiff."

Subsequently appellant filed a motion for new trial, alleging as follows:

"1. The verdict of the jury is contrary to law.

"2. Error of law occurring at the trial, as follows:

"a. The court erred in giving to the jury, at the request of the defendant each of defendant's instructions numbered 9, 10, 19, 30, 31 and 35, and to the giving of each of which instructions the plaintiff duly objected within the proper time by filing written objections to each of said instructions after the court had indicated the instructions it would give to the jury.

"b. The court erred in submitting to the jury, at the request of the defendant each of defendant's written interrogatories to the jury numbered 3, 5, 6, 7, 10, 11 and 12, and to the submitting of each of which written interrogatories to the jury the plaintiff duly objected within the proper time by filing written objections to each of said written interrogatories to the jury after the court had indicated the written interrogatories to the jury it would submit to the jury."

Said motion was overruled and appellant assigns as error the overruling of such motion.

The evidence discloses that the decedent's employer, Harley Coster, operated an electric car sales and service company in Indianapolis, Indiana. The appellee company operated a welding shop in Elkhart, Indiana, where it made undercarriages for house trailers and did some custom work.

Decedent's employer had several trailers built by the appellee to be used for transporting golf carts. One semi-trailer unit was built in January, 1962, and another in May, 1963, the latter being the one involved in the accident in this cause. Appellee built the May, 1963, trailer from a flatbed trailer purchased by the decedent's employer. Also, the top level of the January, 1962, trailer was cut off and installed as the top level of the May, 1963, trailer.

The newer model golf carts were approximately six inches higher than the older models and, as a result, the appellee was requested to make the top level of the trailer six inches higher. The evidence discloses that at each end of the cross brace there were four edges that could have been welded, but that at each end only one was welded; that the penetration achieved—the amount of parent metal melted along with the amount of weld metal fused into the joint—extended only one-sixteenth of an inch to one-eighth of an inch into the thickness of the cross braces at each end.

Appellant contends that the trial court erred in giving over her objection defendant's instruction No. 19. Said instruction reads as follows:

"If you should find from a fair preponderance of the evidence in this case that the Defendant, Beck Welding and Manufacturing, Inc., constructed the trailer involved in this lawsuit for Harley Coster under his supervision and according to plans and specifications furnished by him; and if you further find that Harley Coster had an opportunity to examine and inspect the trailer after it was completed and then accepted the completed trailer in the condition in which it then was, the acceptance of the trailer by Harley Coster operated as the intervention of an independent human agency which broke the chain of causation so as to preclude the Plaintiff's decedent and the Plaintiff on his behalf from asserting or relying on any duty on the part of the Defendant to use care for the Plaintiff's decedent in the construction of the trailer in question, unless you further find that either (1) the supervision of Harley Coster, if any, or the plans and specifications furnished by him, if any, were so obviously dangerous that no reasonable man would have accepted the supervision, if any, or followed the plans and specifications, if any, furnished by Harley Coster; or (2) the Defendant knew of the existence of the defects and fraudulently concealed them; or (3) the work done by the Defendant was so negligently defective as to be imminently dangerous to third persons."

In the opinion of this court, the giving of appellee's instruction No. 19 over appellant's objection thereto constituted reversible error. For the purpose of this holding, the court would direct its attention to the following language contained in said instruction:

". . . and if you further find that Harley Coster had an opportunity to examine and inspect the trailer after it was completed and then accepted the completed trailer in the condition in which it then was, the acceptance of the trailer by Harley Coster operated as the intervention of an independent human agency which broke the chain of causation so as to preclude the Plaintiff's decedent and the Plaintiff on his behalf from asserting or relying on any duty on the part of the Defendant to use care for the Plaintiff's decedent in the construction of the trailer in question . . ."

As a general rule it may be stated that a contractor or manufacturer is liable to only those individuals in privity

with him, and may not be held to be liable to third persons who do not have a contractual relationship with him, for negligence in the construction or manufacture of goods. In *J. I. Case Co. v. Sandefur* (1964), 245 Ind. 213, 197 N. E. 2d 519, our Supreme Court, citing with approval an exception to the general rule as above stated, quoted from the case of *Huset v. J. I. Case Threshing Mach. Co.* (1903), (8 C.C.A.), 120 Fed. 865, as follows:

" 'The third exception to the rule is that one who sells or delivers an article which he knows to be imminently dangerous to life or limb to another without notice of its qualities is liable to any person who suffers an injury therefrom which might have been reasonably anticipated, whether there were any contractural relations between the parties or not.' "

Further, in *J. I. Case Co. v. Sandefur, supra,* the court stated:

"As so often happens in the development of the common law, eventually the exceptions become the rule, and that is what has happened during the last sixty years to the principle under consideration here."

A limitation to the rule exception cited in *Huset v. J. I. Case Threshing Mach. Co., supra,* and later adopted by the Supreme Court of Indiana, is set forth in the cases of *Travis, Admx. v. Rochester Bridge Co.* (1919), 188 Ind. 79, 122 N. E. 1, and *Davis v. Henderlong Lumber Co.* (1963), 221 F. Supp. 129. In the *Davis* case, the court stated:

"Thus, it was stated in *Russell v. Arthur Whitcomb, Inc.,* 100 N. H. 171, 121 A. 2d 781 (1956), that one important limitation on the rule placing building contractors on the same footing as sellers of goods, and holding them to the general standard of reasonable care for the protection of anyone who may foreseeably be endangered by their negligence even after acceptance of the work, is that the *contractor is not liable if he has merely carried out the plans, specifications, and directions given him, since in that case the responsibility is assumed by the employer, at least when the plans are not so obviously dangerous that no reasonable man would follow them.*"

In the case at bar the evidence discloses that appellee made two semi-trailers for Coster, the first in January, 1962, and the second in May, 1963. It was the second trailer that was involved in Hobson's death. Appellee's president, Erman Beck, testified that he provided the design and plan for the building of the first trailer and that Coster told him he had had trouble with the undercarriage of the first trailer being too light and he wanted Beck to build a second trailer, this time using a heavy duty Fruehauf flatbed to correct the problem. Coster wanted the top six inches higher for the second trailer because the new golf carts were higher. As to the design and general plan for the second trailer, Beck testified that he had supposed from the conversation with Coster that Coster meant that the second was to be the same, except that the top level should be raised six inches.

While it may be found from the above stated evidence that the design of the May, 1963, trailer was provided by Coster, the evidence is uncontradicted that the accident in question resulted from the fracture of a crossbar and not from a flaw in the design. The evidence is also uncontradicted that the employees of appellee possessed the expertise in the area of welding and that such expertise was completely outside the experience, skill or submitted plans of decedent's employer, Harley Coster.

Appellant has asserted reversible error in the giving of other instructions, but in light of the fact that we are of the opinion that the giving of defendant's instruction No. 19 constituted reversible error in that it was an improper statement of the law, we deem it unnecessary to discuss the propriety of these other instructions.

Judgment reversed and remanded with instructions to grant appellant's motion for a new trial. Costs taxed against appellee.

Hoffman, J., concurs, White, J., concurs in result, Sharp, J., concurs in result with opinion.

CONCURRING OPINION

Sharp, J.—Although I concur in the result reached by the majority opinion, I believe it necessary to discuss arguments raised by the brief and oral arguments in this case. I do this in view of the importance of this case in the so-called products liability area.

The arguments of both sides generally polarize around their respective characterizations of the legal status of Appellee.

Basically, Appellant would classify Appellee as a manufacturer and would object to Defendant's Instruction Number 19, set out in the majority opinion, for the reason that it requires privity, which requirement, Appellant argues, was abrogated in Indiana by *J. I. Case v. Sandefur*, 245 Ind. 213, 197 N. E. 2d 519 (1964).

Appellee's argument as it pertains to Defendant's Instruction Number 19 is that Appellee is and should be considered an independent contractor and thus the case of *Davis v. Henderlong Lumber Co.*, 221 F. Supp. 129 (N. D. Ind. 1963), is relevant. The *Davis* case, while recognizing that Indiana would follow the rule of *MacPhersen v. Buick Motor Co.*, 217 N. Y. 382, 111 N. E. 1050 (1916), in products liability cases, retains an exception to that rule in cases involving independent contractors.

The facts of this case, as the arguments indicate, do not lend themselves to a simple classification of the Appellee either as a manufacturer or an independent contractor. I do not believe that the applicable law requires such an automatic labeling or categorization.

The important question is not whether the Appellee is a "manufacturer" or an "independent contractor." The proper question presented here is: What is the liability to third persons of a party who constructs or manufactures chattels for another party for injuries sustained by the third party because of a defect in the product?

In what have been traditionally labeled as "products liability" cases, Indiana finally formally adopted the rule of *MacPhersen v. Buick Motor Co., supra,* in the *J. I. Case* decision. The Indiana Supreme Court held that the manufacturer of a product would be liable to third persons for the negligent manufacture of the product with hidden defects. The Court stated that the manufacturer does not thereby become an insurer. It is not necessary in this opinion to examine in more detail the well established ramifications of this general rule.

It is necessary, however, to examine the law as it applies to those cases which cannot so easily be labeled as "products liability" cases; that is, cases in which the Defendant does not individually and separately plan, design, produce and sell a product on the "open market."

Traditionally, the other class of cases which was recognized as being significantly different and warranting the application of different principles of law was that class involving building contractors. The liability to third persons of one who constructs a building or structure for another has not kept pace with that of a "manufacturer." In many jurisdictions, including Indiana, the requirement of privity lingered. See Anno. at 58 A. L. R. 2d 869, 870. See also, *Travis v. Rochester Bridge Co.,* 188 Ind. 79, 122 N. E. 1 (1919). The *Travis* case held that the acceptance of the work by the other party to the contract operates as the intervention of an independent human agency which breaks the claim of causation so as to preclude a third party from maintaining an action against the contractor. The Court held that in cases involving products not "inherently dangerous" there could be no liability for hidden defects unless the builder knew of the defects and failed to warn the user or if he fraudulently concealed the defects. *Davis v. Henderlong Lumber Co., supra,* dispensed with the privity requirement in construction cases but retained one proper exception. That case held that a building contractor is held to the same general standard of reasonable care for the protection of anyone who may fore-

seeably be endangered by his negligence, even after completion and acceptance of the work or structure, unless the contractor has merely carried out plans and specifications and directions given him. The Court held that a builder is not held responsible for accidents resulting from inadequacies in plans or specifications, *unless* the plans are so obviously dangerous that no reasonable man would follow them. *Davis* inherently would hold a contractor liable for hidden defects, *without* requiring that he fraudulently concealed them. See also the leading case of *Hanna v. Fletcher,* 231 F. 2d 469 (D. C. Cir. 1956).

This is the proper law. There is no logical reason for holding a manufacturer and contractor to different standards of care with respect to hidden defects. The rule and reasoning of *MacPhersen v. Buick Motor Co.* should be applicable to both.

Finally, it is necessary to consider that group of cases, like the instant one, which do not easily fit neatly in one category or the other, i.e., in neither the "products liability" group nor building contractor group.

The duty and standard of care should be no different. The rule stated in *Davis* need not be arbitrarily restricted only to the classes of cases which can be labeled as independent building contractor cases. The rules of *Davis* and *J. I. Case* are not mutually exclusive. One who constructs a chattel or building for another is liable to third persons who are injured as a result of a hidden defect in the product. For a builder, contractor, or manufacturer to be liable to a third person for an injury sustained by that person after the completion and acceptance of the work, the defendant must have been guilty of negligence, the plaintiff must be one of a class as to whom the consequences of negligence may be foreseen, the injury must be the proximate result of the negligence, and the plaintiff must be free of contributory negligence. If the contractor or builder is acting upon plans and specifi-

cations furnished by the other contracting party, the contractor is justified in relying upon those plans and specifications, unless they are so obviously defective that an ordinary contractor of ordinary prudence would not follow them.

To the extent that Defendant's Instruction Number 19 states the Appellee's liability to third persons for hidden defects would be cut off by acceptance of the work unless the Appellee "knew of the existence of the defects and fraudulently concealed them", it is erroneous.

An important distinction of the *Davis* case should be noted here. It is possible for defect to be inherent in the plans and specifications furnished to the builder or contractor. In the *Davis* case, for example, the defect resulting in the injury was in a chemical fume hood and exhaust apparatus constructed by the defendant and installed in a newly constructed chemical laboratory. The defect was inherent in the plans and specifications given to the defendant and were without the bounds of the expertise of the defendant. In such a situation the defendant is not held responsible unless, as has already been stated, the plans are so obviously defective no reasonable builder would follow them. If, however, the defect is in the construction itself, the principles of *MacPhersen v. Buick Motor Co.* apply.

The great emphasis which counsel for both sides place upon the determination of who supplied the plans, designs, and specifications for the trailer in question is not only reduced by the anomolous answers to interrogatories given by the jury in which they found neither Harley Coster nor Beck Welding designed the trailer, but also by the principle stated above; i.e., that the builder or contractor is liable to third persons if the defect resulting in the injury is in the construction itself and not a defect inherent in the plans and specifications. Here the evidence is clear the defect was in a weld, in the construction itself. Only if the injury to Hobson resulted from a defect in the design of the trailer would the

question of who furnished those designs and specifications have the relevance that counsels would have us give it.

Although Defendant's Instruction Number 19 constitutes reversible error, the foregoing discussion is relevant also to Defendant's Instruction Number 31, objected to by Appellant and herein set out:

> "Before a manufacturer can be held to respond in damages to an injured third party who is not in privity of contract with the manufacturer and in circumstances where the manufacturer so constructed the product as to make it imminently dangerous when put to the use for which it was intended, it must be shown that the article is imminently dangerous when put to the use and serving the very purpose for which it is bought and sold."

This instruction is also erroneous in that it establishes a different standard of liability for those persons "not in privity" with a manufacturer. *J. I. Case v. Sandefur, supra,* has abolished this difference in Indiana as has been stated.

Both instructions are erroneous. For this reason and the reasons set out above I concur in the result reached by the majority opinion.

NOTE.—Reported in 245 N. E. 2d 344.