CORNETT, PLAINTIFF, *v*. FICKS REED COMPANY AND WM. LANG & SONS COMPANY, DEFENDANTS.

Common Pleas Court, Hamilton County.

No. A-154719.   Decided May 28, 1959.

568

Mr. *C. Robert Beirne*, for plaintiff.
Mr. *Philip J. Schneider* and Mr. *John M. McCaslin, Sr.*, for Ficks Reed Company.
Mr. *Ambrose H. Lindhorst*, for William Lang & Sons Company.

BELL, J. This action was filed by the plaintiff, Ernest Cornett, against two defendants, Ficks Reed Company and William Lang & Sons Company.

The basis of plaintiff's claim is that the injuries of which he complains were sustained as the result of the combined and

concurrent negligence of both defendants as the direct· and proximate cause thereof.

The trial of the cause was protracted, lasting about six weeks. The transcript of the testimony amounts to upwards of fifteen hundred pages. The jury returned a verdict in favor of the plaintiff in the sum of $150,000.

Each defendant filed a motion for judgment notwithstanding the verdict, both of which motions were· overruled. Each defendant filed a motion for a new trial. The defendant Ficks Reed Company's motion contains twelve separate grounds, and the defendant Lang & Sons Company contains thirteen separate grounds.

The facts which the evidence tended to prove are substantially as follows:

The defendant Ficks Reed Company is engaged in a manufacturing business, and at the time of the occurrence of the incident involved herein occupied a building at 424 Findlay Street in the City of Cincinnati, and at that time was in exclusive occupancy and control of the building.

The defendant William Lang & Sons Company was, at the time complained of, engaged in the fabrication, construction and erection of fire escapes.

Some time in the year 1951, the defendant Ficks Reed Company contracted with the defendant William Lang & Sons Company, to fabricate, construct and erect two fire escapes on the building heretofore mentioned; one of which fire escapes was to be erected on the front of the building facing Findlay Street, and the other on the rear of the building, on an alley sometimes known as Charlotte Street. The defendant Lang & Sons Company completed the work on the contract either late in the year 1951, or early in the year 1952—the exact date is unimportant.

The plaintiff was employed by a company known as the Queen City Roofing Company, and had been so employed for a period of years prior to his injury.

In the year 1952 the defendant Ficks Reed Company contracted with the Queen City Roofing Company to do work on the roof of the building located on Findlay Street, upon which the defendant Lang & Sons Company had erected the two fire

escapes. There was a third fire escape on said building, extending from the building to an areaway next to the building.

Under the. contract of 1952 between the defendant Ficks Reed Company and the Queen City Roofing Company, it was understood and agreed that the work would be done during that period of time when the defendant Ficks Reed Company was closed for a vacation period.

The work was completed without incident, and is entirely unimportant in this lawsuit except that the men working upon the roof for the Queen City Roofing Company (of whom plaintiff was one), were instructed by the Ficks Reed Company to use a fire escape to enter upon and leave the roof of the building, and they did use the Charlotte Street fire escape upon which plaintiff was injured in 1954.

In the year 1954, the defendant Ficks Reed Company again contracted with the Queen City Roofing Company to do a small amount of work on the roof of the same building, which work could be done in a period of one day. The evidence is undisputed that this work also was to be done when the Ficks Reed Company was not in operation, and that the men were to use the fire escape as a means of exit.

On Saturday, August 21, 1954, the Queen City Roofing Company sent three of its employees to do this work: one of the three men stayed on the ground in the areaway, the other two (of whom plaintiff was one) went to the roof of the building, by means of an elevator which was operated by an agent or servant of the Ficks Reed Company. The materials necessary to do the work were hoisted from a truck in the areaway to the roof. The man who stayed on the ground was in charge of the work. While the work was in progress, and before it was completed, all of the agents or servants of the Ficks Reed Company left the premises.

After the work was completed, the plaintiff and his fellow-workman, the plaintiff being in the lead, started down the fire escape leading into the alley (Charlotte Street), and when the plaintiff attempted to descend from the second floor to the ground level, the cable which suspended the lower section of the fire escape broke, causing the plaintiff to fall to the ground, resulting in severe injuries. All of those injuries were set out in detail in the second amended petition of the plaintiff. They

consisted of a compound "T" fracture of the right femur; dislocation with a fracture, at the head of the right and left radius of his elbows; fracture of the right patella; herniated left testicle; laceration of the frontal scalp area, and numerous lacerations, bruises, contusions and abrasions of his body.

The negligence alleged against the Ficks Reed Company is that it failed to provide the plaintiff with a reasonably safe place to work; failed to properly inspect the fire escape to ascertain its condition, and that it failed to maintain the fire escape in a reasonably safe condition after installation.

The negligence alleged against the William Lang & Sons Company was that it equipped the fire escape with a cable which was neither designed nor suitable for the purpose of suspending the lower ladder of the fire escape; that it was negligent in designing and installing a counterbalance mechanism for said fire escape in such a manner that it caused excessive wear and strain on the cable; that it was negligent in placing sheaves on the fire escape at an improper angle, and that the defendant William Lang & Sons Company had reasonable grounds for apprehending that presons using the fire escape might be in danger of injury therefrom.

The plaintiff presented one theory against the defendant Ficks Reed Company as the basis of liability, and a second theory as the basis of liability against William Lang & Sons Company.

The principal claim of negligence against the Ficks Reed Company was based upon its failure to comply with the provisions of Section 3785.46, Revised Code, which reads as follows:

"The owner of the building shall keep all fire ladders and fire escapes in good repair, free from scales and properly painted."

With respect to Ficks Reed Company the evidence established that while this fire escape was erected upon the building early in 1952, and the accident occurred on August 21, 1954, no inspection or examination of the fire escape was ever made from the time of its erection to the time of the accident, and no repairs were made to it except that about two months prior to the accident the fire escape was painted and the cable greased. The painter testified that the cable was then in good order.

The evidence discloses with reference to William Lang &

Sons Company, that the cable which was used to suspend this swinging stairway of the fire escape was three-eighths inch iron tiller rope cable, manufactured by the Bethlehem Steel Company.

The main question with regard to Lang's liability was as to whether a three-eighths inch iron tiller rope was sufficient in size and strength to withstand the stress and strain in the use of the stairway portion of the fire escape. Much evidence was introduced by both the plaintiff and the defendants upon that subject. Both sides offered numerous expert witnesses with regard to the sufficiency of the cable.

In addition to the evidence offered by the defendant William Lang & Sons Company that the cable was of sufficient size and strength to withstand the stress and strain of the weight of the stairway portion of the fire escape, numerous times during the trial that defendant also raised the question of law that there was no privity of contract between it (William Lang & Sons Company) and the Queen City Roofing Company, or the plaintiff, to make it (William Lang & Sons Company) responsible in damages to the plaintiff; and it was also argued by the defendant Lang & Sons Company that the length of time between the installation of the fire escape and the accident absolved it from liability.

On the first question, the court applied the law as laid down by the Court of Appeals of New York in the case of *MacPherson* v. *Buick Motor Company*, 217 N. Y., 382, 111 N. E., 1050, L. R. A. 1916F. As to the second point, with reference to the lapse of time between the installation and the accident that question was submitted to the jury as a question of fact.

The doctrine of the *MacPherson case* has never been squarely decided by the Supreme Court of this state to be the law of Ohio. (On several occasions the court has cited that case and the principles announced therein as being a salutary rule of law adopted in most of the states of the Union.) The principle announced in the *MacPherson case*, as I understand it, is that where the manufacturer is guilty of negligence in the manufacture of an article for use of the public and some one is injured as the result of such negligence, the manufacturer can be held liable even though there is no privity of contract.

At the conclusion of the evidence the plaintiff offered three,

and the defendants offered about twenty special charges, some of which were given and some refused.

The court has re-examined the special charges which were given and has concluded that they were proper charges.

As to the one charge offered by the plaintiff which was refused, no comment will be made.

The court will briefly comment on the charges which were offered by the defendants and refused:

Special Charge "B" (record page 1424) was refused for the reason that there was no evidence that the plaintiff chose his means of egress from the defendant's building solely for his convenience. The uncontradicted testimony discloses that at the time that the contract was made between Ficks Reed Company and the Queen City Roofing Company in 1954, it was agreed that the work was to be done during the vacation period of the Ficks Reed plant and that the men were to use the fire escape as a means of egress from the roof of the building.

Special Charge "C" in the court's opinion is not a correct charge as to the meaning of the term "proximate cause" as applied here. A charge embodying direct and remote cause could only confuse the jury. It is my conception of the law in this case that if each defendant was guilty of any negligence which contributed to the proximate cause, both defendants were liable.

Special Charge "D" was on the subject of contributory negligence. There was nothing in the evidence to warrant such a charge.

Special Charge "E" in the opinion of the court is not a correct charge for the same reason as Charge "C" was not a correct charge.

Special Charge "F" also was on the proposition of contributory negligence.

Special Charge "G" in my opinion does not correctly state the law as applied to this case.

Special Charge "H" was refused on the basis that there was no evidence that the plaintiff knew that the cable was in a dangerous condition.

Special Charge "I" was refused upon the basis that it could be construed as making defendant Ficks Reed Company

liable for any negligence of defendant Lang & Sons Company in the materials used, the fabrication or installation by Lang & Sons Company.

Special Charge "J" was refused for the reason that if Lang & Sons Company, as manufacturer of the fire escape, used improper or insufficient materials in its design, fabrication or installation, then it would be liable. The only evidence as to sufficiency of size or composition of the cable was opinion evidence.

Special Charge "Q" in my opinion was not applicable to the factual situation presented by the evidence.

The defendants also offered a number of interrogatories, four of which were given and the balance refused. The ones that were refused did not require a finding as to ultimate facts.

The two interrogatories given on behalf of the defendant Ficks Reed Company, and the two interrogatories given on behalf of the defendant William Lang & Sons Company, which were answered by the jury, disclose that the jury found that both of the defendants were guilty of negligence and that the negligence of the Ficks Reed Company was not the sole proximate cause of the plaintiff's injuries. The same finding was made with reference to the defendant William Lang & Sons Company.

In substance, by the answers to the interrogatories, the jury concluded that each defendant was guilty of negligence, and that the negligence of each contributed to the proximate cause of the plaintiff's injuries.

The record contains many objections made to the admission of evidence, all of which had been considered by the court.

No one would be so bold as to assert that in a trial which lasted six weeks there was no error in rulings on the admission of evidence; but in the opinion of the court there was no ruling which was prejudicial to the rights of either defendant, or both of them.

In the court's opinion the most difficult question involved herein is the size of the verdict which, as stated before is $150,000.

While it is true that the plaintiff was severely injured, lost

one leg and in addition sustained other permanent injuries, the record discloses that his earning capacity in the future has not been totally destroyed. At the time of the accident he was earning in the neighborhood of $4,000 per annum. There was no claim for medical attention or hospitalization. (The record discloses that the medical and hospital bills were paid by the State of Ohio under the Workmen's Compensation Law.)

It was claimed by plaintiff's counsel, by figures presented to the jury in oral argument, that the plaintiff's loss of earnings amounted to $129,000. The amount granted by the jury for loss of future earnings cannot be ascertained, from the verdict, as it was for one lump sum; however, it is a fact that for about seventy to seventy-five thousand dollars the plaintiff could purchase an annuity contract which would yield him about $4,000 a year for the rest of his life. That being true, the balance of the award—between seventy-five and eighty thousand dollars, was an award for his pain and suffering and his permanent injuries.

This brings the court face to face with the *Bartlebaugh case* (150 Ohio St., 387, 38 Ohio Opinions, 237). That was a tort action in which the plaintiff (who was an employee of a railroad company) suffered permanent injuries in the loss of both legs and the claimed total loss of future earning capacity. The jury returned a verdict in the sum of $225,000 for which judgment was rendered. That judgment was affirmed by the court of appeal. On review by the Supreme Court the verdict was found to be excessive and a remittitur of $75,000 was ordered, the decision holding that the verdict was excessive in that amount. The plaintiff agreed to the remittitur and the judgment was thereupon affirmed by the Supreme Court.

Based upon the reasoning and logic of that case (including the injuries suffered by the plaintiff therein), this court concludes that this verdict is excessive, although not rendered under the influence of passion and prejudice, and grants to the plaintiff the right to accept the remittitur of $25,000 from the judgment. In the event that the plaintiff consents to such remittitur within the period of fifteen days of the receipt of this opinion, both motions for a new trial will be overruled. If the plaintiff fails to agree to such remittitur, a new trial will be granted.