John H. WILLIAMS, d/b/a John H. Williams, Photographer,

v.

TAYLOR PUBLISHING COMPANY OF DALLAS, TEXAS, and Bob Loewe.

Civ. A. No. 2987.

United States District Court
E. D. Louisiana,
Baton Rouge Division.

Feb. 16, 1965.

Lawrence A. Uter, Baton Rouge, La., for plaintiff.

R. Gordon Kean, Jr., Sanders, Miller, Downing, Rubin & Kean, Baton Rouge, La., for defendant, Taylor Publishing Co.

WEST, District Judge.

Plaintiff, John H. Williams, a commercial photographer, brings this suit for damages against defendant, Taylor Publishing Company of Dallas, Texas, and Bob Loewe, individually and as an agent or representative of Taylor, who, not being a resident of Louisiana, and not be-

588

ing present or represented in the State of Louisiana, is not properly before this Court, for damages allegedly sustained when the Taylor Publishing Company reproduced, in what plaintiff claims to be an unworkmanlike manner, certain of plaintiff's photographs in a college yearbook. Taylor Publishing Company, hereinafter referred to as defendant, was under contract with Southern University at Baton Rouge, Louisiana, to publish its yearbook, THE CAT. After having been invited to bid on the photography work, and having been declared the low bidder, plaintiff was awarded the contract by Southern to do the photographic work which was then to be reproduced by defendant in the yearbook. There was no contract of any kind entered into between the plaintiff and the defendant.

After the 1963 yearbook was published by defendant, plaintiff was not thereafter invited to bid on future photography work for Southern University, in spite of the fact that he had done this work for the University each year since 1958. Plaintiff contends, in this suit, that his loss of this business was due entirely to the fact that when the defendant reproduced his pictures in the 1963 yearbook it did such a poor and unworkmanlike job that it gave the pictures contained therein the appearance of being inferior photographic work. He alleges that this caused him to lose future contracts for photography work with Southern University and with other schools, and that generally his reputation as a photographer was so damaged that he ultimately was forced to close his studio and cease doing business as a photographer.

This matter is now before the Court on defendant's motion for summary judgment, which motion is supported by the depositions of two Southern University officials, in which they both unqualifiedly testify that the decision of Southern University not to invite future bids from the plaintiff on photography work was in no way based upon the reproductions of his work in the 1963 edition of THE CAT, but was instead based upon plaintiff's

failure to live up to various provisions of his contract with Southern. In these depositions the officials of Southern testify that they did not want to employ the plaintiff for any further photography work because (1) he repeatedly failed to meet deadlines provided for in the contract for furnishing pictures, (2) he often failed to show up at appointed times for taking pictures of students and groups of students, (3) his lack of punctuality caused the publication of the 1963 issue of THE CAT to be delayed until after school had let out for the summer that year, and (4) the photography department of Southern University complained about the caliber of the photographs furnished by the plaintiff for reproduction in the yearbook in that many of them appeared to be out of focus, a considerable number of pictures of students were taken when their eyes were closed, and the color tones were not good. It was for these reasons alone, according to the deposition testimony accompanying defendant's motion for summary judgment, that the plaintiff's contract was not renewed subsequent to 1963.

When the motion for summary judgment was heard, the Court granted the plaintiff time within which to obtain and file countervailing affidavits or other evidence in support of his position. In response, plaintiff filed two affidavits, one signed by a commercial photographer, and one signed by a commercial printer. The affidavits are identical, and merely state that in the opinion of the affiants there were some spots on some of the pictures in the book caused by faulty inking or improper printing, and that the spots were in no way caused by the photographic work of the plaintiff. The affiants express the further opinion that the yearbook, as printed, does not reflect a workmanlike job. These two affidavits constitute all of the so-called countervailing evidence filed by plaintiff. These affidavits in no way refute the testimony of the officials of Southern University to the effect that the caliber of printing in the yearbook played no part whatsoever in the termination of plaintiff's employment

as a photographer for Southern University. The evidence is completely one-sided, and plaintiff has apparently been unable to refute it in any way. There is simply no material issue of fact involved. There is just no showing whatsoever of any causal connection between the caliber of printing contained in the 1963 edition of THE CAT, and the refusal of Southern University to enter into subsequent contracts with the plaintiff for photography work. For these reasons, defendant's motion for summary judgment must be granted.

 But even if summary judgment were not granted for these reasons, plaintiff's suit must be dismissed for the further reason that it fails to state a claim upon which relief can be granted. There was no privity of contract between the plaintiff and the defendants, and hence, a breach of defendant's contract with Southern University would not give rise to an action based thereon by the plaintiff. Plaintiff asserts, however, that he is not suing for breach of contract, but for damages resulting from a tort committed by the defendant. He argues that the unworkmanlike manner of reproducing the pictures constitutes a tort resulting in damage to him for which he may recover under Louisiana law. He relies primarily on the doctrine enunciated in such cases as McPherson v. Buick Motor Company, 217 N.Y. 382, 111 N.E. 1050, (1916) and its progenies, including Marine Insurance Company v. Charles W. Strecker, d/b/a Orleans Cabinet Works, 234 La. 522, 100 So.2d 493 (1957), wherein manufacturers were held liable for injuries to third parties caused by their products, even though there was no privity of contract between the injured user and the manufacturer. But these cases are not applicable here. The holdings in those cases are based upon the finding that either the instrumentality causing the injury was an inherently dangerous instrumentality, the use of which by third parties was to be reasonably expected by the manufacturer, or that injury to third party users was reasonably foreseeable

by the manufacturer if the chattel manufactured, even though not inherently dangerous, was not reasonably safe for its intended use.

 Plaintiff correctly states that for a plaintiff to recover in tort under Louisiana law he must show a legal duty owed him by the defendant, a breach of that duty, and a resulting injury. But he has failed to show that he has any evidence whatsoever to support any of these ingredients of tort liability. He has shown no legal duty owed by defendant to him, no breach of a duty owed to him by defendant, and even more significantly, he has produced no evidence whatsoever to show any injury resulting to him from any action or inaction on the part of the defendant.

For these reasons also, defendant's motion to dismiss must be granted.

Judgment will be entered accordingly.