THERESA FOMA'I, Plaintiff

v.

CHRISTINA SAMANA, MOAALI'ITELE K. TUUFULI dba
MALAMAMAISAUA CAR RENTAL, and AMERICAN
INTERNATIONAL UNDERWRITERS, Defendants

High Court of American Samoa
Trial Division

CA No. 13-86

April 29, 1987

Before REES, Chief Justice

Counsel: For Plaintiff, William Reardon
For Defendant Moali'itele, John Ward
For Defendant AIU, Roy J.D. Hall Jr.

Plaintiff was a passenger in a car driven by defendant Samana and owned by defendant Moaali'itele (Malamamaisaua Car Rental), who had rented it to Samana. The car was involved in an accident which the evidence shows to have been caused by the negligence of defendant Samana. Plaintiff sued the driver, the owner, and the insurance company (AIU) which had insured the vehicle.

Defendant Samana was served with process but then removed from the Territory. She was not present at trial and has not appeared in the action through an attorney or otherwise. Defendant AIU moved for summary judgment on the ground that the insurance policy it had issued on the car had been cancelled for nonpayment of premiums. The hearing on the motion for summary judgment was held on the morning of trial. We granted summary judgment for AIU and then proceeded to trial on the claims against the other defendants.

I. The Cancellation of the Policy

We will begin by stating for the record our findings of fact and conclusion of law with regard to the cancellation of the policy.

Defendant Moaali'itele, the insured under the policy, urged that it had never been cancelled. His position was based on two grounds: (1) He had no personal recollection of the cancellation, and it was not reflected in the records of the government agencies that are supposed to keep such records.

(2) Even if AIU did attempt to cancel the policy, it failed to follow the procedure set out in A.S.C.A. § 22.2013, which requires that the insurer notify the Director of Administrative Services at least ten days before the effective date of the cancellation.

We found, however, that AIU's manager had in fact given proper notice of the cancellation. He produced copies of letters to Moaali'itele and to the Insurance Commissioner, and he testified that they had been sent after a number of demands in writing and in person that the premiums be paid. (He also produced a copy of the last such demand, threatening cancellation in two weeks and dated two weeks prior to cancellation.) AIU also produced evidence that the Insurance Commissioner at the time --- to whom the function of receiving notices of cancellation had been expressly delegated in writing by the Director of Administration--- regularly lost official documents, many of which he seems to have kept in his car.

Unfortunately, AIU's manager testified that the notices had been delivered by his secretary. He testified that he invariably used this method, that he knew his secretary to be an extremely reliable person, and that in the several years of her employment it had never come to his attention that a letter she was supposed to have delivered had not in fact been delivered. Although we recognize that this is perhaps the most common method of delivery of important documents in American Samoa, it is far better in cases such as this one to use registered mail or at least to get written receipts. On balance, however, we found it more likely that the records were lost by the government (also a sort of custom here) than that the notices were never delivered.

We further concluded that AIU had complied with the statutory notice requirement when it sent a notice of the cancellation to the Insurance Commissioner, to whom the Director of Administration had directed that all such notices be sent.

## II.  The Liability of the Car Rental Agency

Defendant Moaali'itele (Malamamaisaua Car Rental) argues that he cannot be held liable for the negligence of the driver just because he owned the car and rented it to her. His counsel cites authority to the effect that under the traditional

common law rule a rental agency would be considered a "bailor" that assumes no liability for the negligence of its "bailee." Orose v. Hodge Drive-It-Yourself Co., 9 N.E.2d 671 (Ohio 1937); cf. Smith v. Hertz Rent-a-Car, 377 F.2d 885, 887 (1967) (taking note, with apparent approval, of a Virgin Islands municipal court decision to this effect).

The common law concept of bailment seems a blunt and awkward instrument for the resolution of controversies such as this one. "Bailors" include the person who leaves his private automobile in a garage for repairs, the friend who lends his car to a friend, and Hertz Rent-a-Car. A rule which treats these three kinds of defendants alike, denying liability unless the defendant knew or should have known that his "bailee" was unfit to drive, will have the ironic effect of ensnaring the friend quite often, the garage client occasionally, and Hertz almost never. This is because Hertz is the only one of the three that regularly puts automobiles into the hands of people about whom it knows almost nothing. Moreover, such a rule gives car rental companies a strong incentive to continue knowing as little as possible about the people to whom they rent. It is an odd rule.

Accordingly, a number of states have enacted statutes imposing liability on the owner of a car for damages caused by the negligence of anyone who uses it with his consent. The courts of one state, Florida, have achieved the same result by application of the common law concept of "dangerous instrumentalities." See Susco Car Rental System v. Leonard, 112 So. 2d 832, 836 (1959):

> The principles of the common law do not permit the owner of an instrumentality that is . . . peculiarly dangerous in its operation, to authorize another to use such instrumentality on the public highways without imposing upon such owner liability for negligent use. The liability grows out of the obligation of the owner to have the vehicle . . . properly operated when it is by his authority on the public highway.

Cf. MacPherson v. Buick Motor Co., 111 N.E. 1050, 1053 (N.Y. 1916) (per Cardozo, J.) ("This automobile was designed to go fifty miles an hour. . . . Precedents drawn from the days of travel by stagecoach do not fit the conditions of travel today."). Rather than treat the car rental company

as someone who has simply left an item in the care of another, the Florida Supreme Court in _Susco_ analogized the company to an employer who has entrusted his automobile to an employee. So long as the employee is using the car for purposes that generally further the employer's business, the employer is vicariously liable for the employee's negligence. This is true even if the employer had no reason to know the employee would be negligent, and even if the employee was violating the employer's specific instructions concerning the care to be taken.

The reasoning of _Susco_ seems persuasive, at least as applied to companies that are in the business of renting automobiles. A car that has been rented is on a business errand for its owner, just as surely as if it were being used by an employee. That it happens to serve the business purposes of a rental company to .entrust its automobiles to anyone with a driver's license and.a Visa card --- indeed, that the whole point of the business is to put as many vehicles as possible into the care of strangers, and to maximize the number of hours and miles that each vehicle is on the highway --- is an unpersuasive, argument for imposing a _less_ stringent standard of liability than is imposed on the employer whose employees' use of his automobiles is occasional and incidental.[1]

-----

[1]. The justification for master-servant liability has been put in terms of the control that the employer exercises over his employee. Prosser and Keeton on Torts § 70 at 501-02 (5th ed. 1984). Liability is regularly found, however, under circumstances where the imputation of such control is obviously fictitious. See id. at 503 ("If the other factors involved indicate that the forbidden conduct is merely the servant's own way of accomplishing an authorized purpose, the master cannot escape responsibility no matter how specific, detailed and emphatic his orders may have been to the contrary.")

There are, however, more persuasive arguments that may account for the survival of the master's liability if not for its origin. First, in the absence of vicarious liability it will be profitable for employers to choose and instruct their employees in ways which (while falling just short of actionable

If the Fono had enacted no law applicable to this case, choosing instead to leave to the courts the development and application of common law principles, we would be strongly inclined to adopt the Florida rule. We need not reach this question, however, since we find that the defendant violated a statutory duty to the plaintiff when he allowed the vehicle to be operated on the highway without insurance.

A.S.C.A. § 22.2003 requires the owner of a vehicle to purchase and maintain liability insurance not only for losses occasioned by his own negligence, but also for those inflicted by "any other person who uses the vehicle or vehicles with [his] express or implied permission." Section 22.2018 gives an injured person the right to bring a direct action against the insurer for any damage

---

negligence against the employer himself) maximize the possibility that money will be made or saved for the employer regardless of the risk of harm to people outside the enterprise. Assessing the damage done in the course of the enterprise against the enterprise itself, on the other hand, tends to ensure that the total costs of the enterprise (to everyone, not just to the employer) do not exceed the benefits generated by it. In any case, considerations of cost and benefit aside, it seems <u>unfair</u> to let the damage resulting from a negligently executed business venture fall on a randomly selected member of the public rather than on the person who would have profited had the venture succeeded.

Arguments very similar to these have been advanced for the imposition of strict liability without fault on all business enterprises. We do not mean to make such a suggestion. The total severance of liability from fault, aside from its tendency in practice to burden some enterprises with liability not fairly attributable to their conduct, may actually have the long-term effect of encouraging some kinds of carelessness and other wrongdoing. These risks do not seem so strong when liability is imposed for indisputably culpable conduct on one who is closely connected with it and may have benefited from it.

covered by the policy, whether or not the owner of the vehicle would be liable; and sections 22.1001 and 22.2002 forbid the operation on the public highway of any automobile that is not covered by such a policy.

Even if the defendant rental car company was not directly liable for the damage inflicted by its negligent lessee, these statutes did impose a responsibility to see to it that no such damage would be inflicted that was not covered by insurance. Plaintiff was subjected to such a loss because the defendant company breached its statutory duty not to put an uninsured car on the road.

We recognize that courts should be cautious about defining the breach of a statutory duty as actionable negligence --- even where, as here, the statute was enacted to protect people in exactly the plaintiff's situation against the risk of the very harm that occurred. That a legislature has imposed a criminal sanction on certain conduct does not mean that it also intended to give persons injured by such conduct the right to recover in tort.

In this case, however, the very purpose of the law was to ensure recovery in tort for victims injured by impecunious drivers. If the question had been put to the enacting legislators, it is hard to imagine that they would have been surprised or disconcerted at the possibility that an owner who violates the law might be required by a court to compensate persons who suffered uninsured losses because of his violation. That the legislature enacted a criminal penalty for violation of the insurance law does not mean that it intended to exclude all other remedies. The legislature has also enacted criminal penalties for running a red light and making an illegal left turn, and has never specifically stated that these acts shall constitute negligence in civil actions. Where a statute restates, reinforces, or gives rise to a community standard about how people ought to act toward each other, it should not be regarded as in any way inferior to standards that the courts discovered on their own with no assistance from the legislature. When it is reasonably foreseeable that the failure to observe a community standard will cause a particular kind of harm to a particular kind of victim, such a victim can generally recover when he suffers such harm. See generally Prosser & Keeton, supra, § 36.

108

We hold that the defendant rental company, in allowing its automobile to be operated on the highway without the insurance required by law, violated a duty to the plaintiff. Requiring the company itself to compensate the plaintiff (in an amount not greater than would have been covered by insurance if the defendant had not breached its duty) is a remedy that seems fully consistent with the nature of the duty and with the purpose of the statutes that impose it.

### Damages

The plaintiff testified that she received cuts on her face, neck, back, and arm, and that she spent "one day" in the hospital. She testified that she was unable to move her neck and arm for several weeks after the accident, that she still has some pain from the accident, and that small pieces of glass occasionally emerge from her skin where the cuts were. She did not testify that her cuts needed stitches or other medical attention. There was no expert testimony on the nature and extent of her injuries, and no medical records were introduced. Taking into account the awards customarily given in American Samoa for similar injuries, we assess her damages at $1000.

Judgment will be entered against defendants Samana and Moaali'itele, jointly and severally, in the total amount of $1000.