370 So.2d 815 (1979)
INVESTORS TAX SHELTERED REAL ESTATE, LTD., etc., aPPELLANT,
v.
LAVENTHOL, KREKSTEIN, HORWATH & HORWATH, Appellee.
No. 78-95.
District Court of Appeal of Florida, Third District.
May 1, 1979.
Rehearing Denied June 1, 1979.
*816 Bailey & Dawes and Guy B. Bailey, Jr., Miami, for appellant.
Fowler, White, Burnett, Hurley, Banick & Knight and Richard S. Banick; Turner & Ashe, Miami, for appellee.
Before HENDRY, HUBBART and KEHOE, JJ.
PER CURIAM.
In November of 1972, appellant, Investors Tax Sheltered Real Estate, Ltd. entered into a sale/leaseback transaction whereby it purchased an apartment complex in Dallas, Texas from U.S. Capital Corporation, a wholly-owned subsidiary of Hallmark Group Companies, Inc., a New York corporation; simultaneously, the complex was leased back to U.S. Capital to operate and to pay Investors in excess of $2.5 million, payable in monthly installments. Both U.S. Capital and its parent corporation gave their guaranties on the rental payments. Thereafter the lease aspect of the transaction went into default, and U.S. Capital became a defunct corporation and the Hallmark Group filed a petition in bankruptcy.[1]
In 1974 Investors filed suit in the Circuit Court of the Eleventh Judicial Circuit in and for Dade County against Laventhol, Krekstein, Horwath & Horwath, a national accounting firm,[2] alleging that it had negligently audited, prepared and rendered its unqualified opinion as to Hallmark's 1971 financial statements.[3] The crucial allegations of the cause of action below were that the appellant was caused to rely upon said financial statement which allegedly failed to fully disclose that a certain line item entry (listed under "Assets" as "Notes receivable on mobile home park sales . .") was related to Hallmark's lease obligations on a series of sale/leaseback transactions[4] that were, in reality, merely conditional contractual rights predicated upon a number of critical variables and conditions precedent and, thus, should not have been listed as it was. Appellant asserted, intra alia, that Laventhol performed the Hallmark audit inadequately, and that its methods in preparing the financial statements were in contravention of the dictates of generally accepted accounting principles (GAAP) and generally accepted auditing standards (GAAS) of the accounting profession.
The two issues raised by this appeal are: (1) whether the trial court erred in directing a verdict for defendant/appellee at the close of Investor's liability evidence, and (2) whether privity of contract is required in a negligence action such as this under Florida law. In order for a trial judge to properly grant a directed verdict it must be shown that there has been no invalid encroachment upon the right of a litigant to a jury trial, and the authority to direct a verdict should be exercised with great caution and only when, as a matter of law, no proper view of the evidence and testimony could sustain a verdict in favor of the non-moving *817 party. Mathis v. Lambert, 274 So.2d 601 (Fla.3d DCA 1973) and Sun Life Ins. Co. v. Evans, 340 So.2d 957 (Fla.3d DCA 1976).
The court should direct a verdict if the evidence falls short of the minimum on which a jury could lawfully find for a party. Buhler v. Travelers Indemnity Company, 174 So.2d 59 (Fla.3d DCA 1965). Hence, the trial court must place its own valuation on the evidence to determine the question of its minimum sufficiency. Traurig v. Spear, 102 So.2d 165 (Fla.3d DCA 1958) and Alterman Transport Lines, Inc. v. McCahon, 168 So.2d 707 (Fla.3d DCA 1964).
On reviewing such a judgment, the court is required to observe the settled rule that we should consider the testimony in the light most favorable to the plaintiff, disregarding conflicts in the evidence and indulging in the plaintiff's favor every reasonable inference therefrom. Guerriero v. Adams, 190 So.2d 432 (Fla.3d DCA 1966); Wilson v. Bailey-Lewis-Williams, Inc., 194 So.2d 293 (Fla.3d DCA 1967); Mathis v. Lambert, supra; Kilburn v. Davenport, 286 So.2d 241 (Fla.3d DCA 1973); and Lovings v. Seaboard Coastline Railroad Company, 340 So.2d 1279 (Fla.2d DCA 1977).
A review of the voluminous record reveals that the evidence shows that the financial statement does, in fact, disclose the relationship between the notes receivable asset entry and Hallmark's sale/leaseback transactions; the customary explanatory notes following the consolidated statements puts the reader on notice as to the origin and nature of the asset entry as it relates to the lease obligations to purchasers. Ironically the testimony of one of the appellant's expert witnesses was that a financial statement should be read as a whole, including the notes thereto, and "anyone who took the trouble to read the financial statement should be prepared to put the pieces together." The same expert testified that: (a) the standard user[5] would be able to relate the instant notes to the entry, (b) the subject financial statement was acceptable to the Securities and Exchange Commission, and (c) even though he personally might have explained the notes in a different fashion, he did have the opinion that the disclosure was adequate. Other expert witness testimony presented by appellant was apparently structured on inferences and, in sum, constituted insufficient evidence to establish a prima facie case of negligence.
Additional reasoning for affirmance of the trial court order in this cause is based upon the state of the law in Florida pertaining to liability of an accountant to a third party not in privity of contract with the accountant. In Investment Corp. of Florida v. Buchman, 208 So.2d 291 (Fla.2d DCA 1968),[6] cert. dismissed, 216 So.2d 748 (Fla. 1968), the court rejected the contention that an accountant could be held liable for negligence as one who by profession supplies information for the guidance of others in business transactions, determining that in the absence of privity of contract there could be no right of recovery under a negligence theory. In Canaveral Capital Corp. v. Bruce, 214 So.2d 505 (Fla.3d DCA 1968), this court stated that before an accountant would be liable to a third party with whom the accountant was not in privity for loss allegedly sustained arising out of reliance upon statements prepared by the accountant, there would have to be a showing that the accountant had been guilty of gross negligence, or, having knowledge that the third party intended to rely upon the statements prepared by him, was guilty of fraud in connection therewith. See also, Dubbin v. Touche Ross & Co., 324 So.2d 128 (Fla.3d DCA 1975) and Mulligan v. Wallace, 349 So.2d 745 (Fla.3d DCA 1977).[7] *818 See generally, 46 A.L.R.3d 979, Liability of Public Accountant to Third Parties.
We have carefully considered the record and points on appeal and have concluded that the directed verdict was legally justified in light of the paucity and insufficiency of evidence presented by the appellant/plaintiff.
No reversible error has been demonstrated, accordingly the judgment appealed is affirmed.
Affirmed.
NOTES
[1] Investors had sued both the parent and the subsidiary in a Texas state court. Judgment against them was entered in the amount of $2,289,204. However, the judgment was uncollectible.
[2] Now known as Laventhol and Horwath.
[3] The instant financial statement was part of Hallmark's 1971 annual report which includes the customary president's letter to shareholders, a consolidated balance sheet, a consolidated statement of income, a consolidated statement of changes in shareholders' equity, and the explanatory notes to the consolidated financial statements.
[4] Hallmark's principal subsidiary, Pacific Western Mobile Homes, Inc., was the entity which had entered into the eight mobile home park sale/leaseback transactions. Hallmark's largest asset was the notes receivable on those transactions.
[5] "Direct" users include investors, present or prospective, creditors, present or prospective, tax authorities; "indirect" includes financial investment companies, mortgage companies, and trade unions.
[6] The court's opinion includes reference to and strong reliance upon the reasoning used by the courts in Ultramares Corp. v. Touche Ross & Co. v. Ernst, 278 N.Y. 104, 15 N.E.2d 416 (1938).
[7] None of the four cited cases expands on the rationale and reasoning of prior case law in Florida; rather the cases are the most recent progeny of a line of cases originating with Ultramares, supra.