511 So.2d 384 (1987)
Richard E. GORDON, Jr., et al., Appellants,
v.
ETUE, WARDLAW & CO., P.A., James E. Etue, and Stuart C. Wardlaw, Appellees.
No. BO-216.
District Court of Appeal of Florida, First District.
July 23, 1987.
*385 Jacqueline R. Griffin, of Peirsol, Boroughs, Grimm, Bennett & Griffin, P.A., Orlando, for appellants.
Pamela M. Burdick, of Russell L. Forkey, P.A., Ft. Lauderdale, for appellees.
WIGGINTON, Judge.
Before us is an appeal from an order dismissing with prejudice counts II, V, VI, VII, IX, and X, insofar as those counts purport to seek damages against Etue, Wardlaw & Company, P.A. (E.W. & Co.), James E. Etue, and Stuart C. Wardlaw, certified public accountants.[1] Appellants sought relief on the basis of alleged violations of the Florida Securities Act, chapter 517, Florida Statutes, and Florida's RICO Act, chapter 895, Florida Statutes, as well as on theories of common law fraud and negligence. We affirm in part, and reverse in part.
In January 1985, appellants filed suit against Aqua-Solar Associates, A.T. Bliss & Company, Inc., corporation executives, appellees, and others. In April, before responsive pleadings were filed, appellants filed an amended complaint. Both complaints alleged, inter alia, violations of chapters 517 and 895. Thereafter, in May, motions to dismiss were filed by the defendants that had been served. A hearing was held during which the principle subject of discussion was the question of venue. The court granted the motions to dismiss the complaint on the venue issue with leave for appellants to amend the complaint to try adequately to plead a basis for venue in Alachua County. At the hearing, counsel for E.W. & Co. briefly argued appellees' position on the merits of the motion to dismiss, and the court instructed counsel for appellant to "take those in mind when you redraft the complaint and draft it the best way you can. Be aware that since you've heard those arguments, you may not have an opportunity to amend again, if we come back." Appellants' attorney asked whether that gave her leave to amend matters other than venue, and the court answered that it did.
Appellants thereafter filed their second amended complaint to which motions to dismiss were again filed. At the hearing, *386 the venue issue was abandoned and the parties argued the merits of the motion to dismiss. The court entered its order denying the motion to dismiss of Aqua-Solar Associates, Bliss, and Bliss officers, but E.W. & Co.'s motion to dismiss on the merits was granted with leave for appellants to amend.
On November 19, 1985, the third amended complaint was served, and for the first time, common law fraud and negligence were alleged in counts IX and X, respectively. Again, in response, motions to dismiss by all defendants were filed. After hearing and submission of memoranda, the court entered three orders, one specifically granting E.W. & Co.'s motion to dismiss with prejudice. The motion to dismiss of Aqua-Solar, Bliss, and Bliss executives was denied except for the count alleging a cause of action under chapter 895 (civil RICO).
We first address the sufficiency of counts V, VI, and IX alleging statutory and common law fraud, and reiterate the settled rule that in order to allege fraud, the facts must be stated with such particularity as the circumstances may permit, and the allegations of the complaint should be clear, positive and specific. Fla.R.Civ.P. 1.120(b); Ocala Loan Company v. Smith, 155 So.2d 711 (Fla. 1st DCA 1963); cf. Decker v. Massey-Ferguson Ltd., 681 F.2d 111 (2d Cir.1982). The purpose of pleading fraud with particularity is to enable the court to determine whether a prima facie showing has been made. Ocala Loan Company v. Smith. In the instant case, the facts as alleged relevant to those counts show that in the fall of 1982, a salesman contacted appellants to solicit their investment in a limited partnership known as Aqua-Solar Associates, one of several limited partnerships formed by a publicly held corporation, A.T. Bliss & Company, Inc. As part of the solicitation, appellants received through the mail various materials, including an offering memorandum containing financial statements for 1979, 1980, and 1981. Also contained therein was a certification of the financial statements by appellees Etue, Wardlaw & Company, P.A., stating that its examination was made in accordance with generally accepted auditing standards, and that the statements fairly presented the financial position of A.T. Bliss & Company, Inc., in conformity with generally accepted accounting principles.
Appellants formed a partnership to invest in the Aqua-Solar Limited Partnership, and purchased stock in Bliss. However, in February 1983, Barron's National Business and Financial Weekly published two articles critical of Bliss, particularly regarding the distortion of Bliss' cash earnings, as well as other serious distortions of its financial situation. Appellants thereafter contacted a Mr. Abrams, the Bliss "account executive" that had sold them the Aqua-Solar limited partnership, to inquire further as to the truth of the criticisms. They were assured that the criticisms were unjustified and were invited to attend the annual meeting of Bliss and Company in June 1983, at which time each of the criticisms would be addressed.
Accordingly, appellants Richard Gordon, Katherine Gordon, and Rick Gordon attended the meeting. Present were a number of Bliss officers and directors as well as appellee James Etue, one of the partners of E.W. & Co. Accounting issues were raised and those present affirmed that the financial statements of Bliss were prepared in accordance with generally accepted accounting principles. Additionally, Etue confirmed that the representations concerning the inventory were accurate and that he had personally counted all of the equipment. The stockholders were also told that E.W. & Co. had undergone a peer review by the State Board of Accounting which analyzed the auditing techniques utilized by the company in auditing Bliss' general financial statements, and that the review had concluded that appropriate auditing methods had been used.
Following this meeting, appellants purchased additional stock.
Eight months later, on January 30, 1984, the Securities and Exchange Commission announced that the District Court for the Southern District of Florida had entered *387 consent decrees of permanent injunction against Bliss, two of Bliss' officers, E.W. & Co. and others. Upon receiving this information, appellants sold their stock and suffered a loss of $185,363. Thereafter, Bliss and its "successor" corporation asserted a claim against appellants for the balance due for the limited partnership interest in Aqua-Solar Associates.
Under count IX of their complaint, appellants attempt to allege facts constituting common law fraud. Pertinent to appellees are the following paragraphs set forth or referred to therein:
13. EW & Co., independent certified public accountants, audited the financial statements of A & Co. for the years 1979, 1980, and 1981. The audit reports on those financial statements were included in the Offering Memorandum. EW & Co. assisted in the preparation of the securities offering made pursuant to the Offering Memorandum.
15. [Plaintiffs' partnership] was supplied with false and misleading statements contained in the Offering Memorandum and other materials sent to them to induce them to invest in ASA. Plaintiffs exercised due diligence in investigating the limited partnership, but were misled and defrauded by the materials supplied to them by Defendants containing false statements and material omissions. Plaintiffs were justified in relying upon the information at their disposal due to the assurance of authenticity provided by experts, including certified public accountants and specialized lawyers.
102. This is an action against HEB & Co., ASA, Philip J. Abrams, Moran, EW & Co., Etue, Wardlaw and Roy. Defendants made false statements to Plaintiffs in order to induce Plaintiffs to purchase a limited partnership in ASA and A & Co. capital stock. The false statements made by Defendants are set forth with particularity in paragraphs ... 38(a) ... 39... 41 ... 70(k) and (m).
38(a). The Offering Memorandum contained financial statements of A & Co. that were materially false and misleading. They included material amounts of revenues which had not been collected and were calculated using methods not in accordance with generally accepted accounting principles. These actions resulted in reported earnings materially in excess of the actual earnings of the company and otherwise materially misrepresented its true financial condition.
39. EW & Co., James Etue, and Steward [sic] Wardlaw prepared the Financial Statements that were used in the Offering Memorandum and certified that the Statements were prepared in accordance with generally accepted accounting principles; however, the Statements were false, misleading and not prepared in accordance with generally accepted accounting principles and EW & Co., James Etue, and Steward [sic] Wardlaw knew that these statements were false and not prepared in accordance with generally accepted accounting principles.
41. As a direct result of the affirmative representations and material omissions of the Defendants, Plaintiffs entered into an agreement to purchase and did purchase one limited partnership unit in ASA.
70(k). The Offering Memorandum falsely stated that the balance sheets and financial statements for A & Co. for the years 1979, 1980 and 1981 were prepared in accordance with generally accepted accounting principles.
70(m). Defendants, EW & Co., Etue, and Wardlaw provided a written opinion that was included in the Offering Memorandum, which opinion certified that the balance sheets and financial statements of A & Co. were prepared in accordance with generally accepted accounting principles. EW & Co., Etue, and Wardlaw, however, knew that the statements were not prepared in accordance with generally accepted accounting principles, and knew that the financial information certified by them was inaccurate, incomplete and failed to disclose material facts concerning the financial posture of A & Co. Defendants, EW & Co., Etue and Wardlaw, despite their knowledge of the falsity of the statements contained in the Offering Memorandum and omissions of *388 material information that should have been disclosed therein, substantially assisted in the violation by providing the false certification of these records knowing that investors would rely on the financial statements in determining whether to purchase a limited partnership interest. In addition, Etue on behalf of EW & Co. and Wardlaw, attended a meeting on June 1, 1983, of the A & Co. shareholders, during which time Etue stated that he had personally verified equipment leases, personally counted the equipment, and made further independent verification of the information provided to him by A & Co.; however, these statements were false and misleading.
Further, in order to allege a violation by appellees of section 517.211, Florida Statutes, appellants in counts V and VI allege as to E.W. & Co.:
70(k) and 70(m), supra.

75. On June 1, 1983, Plaintiffs attended the A & Co. annual meeting. Present at the meeting were Mueller, Etue, Civit and Roy. At that meeting, Defendants refuted the Barron's article, falsely stating that the financial statements of A & Co. had been prepared in accordance with generally accepted accounting principles, that the accounting firm of EW & Co. had undergone an extensive peer review concerning the techniques that it had used in auditing A & Co.'s financial statement, and that the peer review concluded that the appropriate auditing methods had been used... .
76. At that meeting, Etue also falsely stated that he had personally verified that certain inventory had been placed in service, and that equipment leases had been entered into.
78. All of the foregoing statements by Defendants were false, and Defendants knew that they were false when they were made. In reliance upon these fraudulent representations of Defendants, Plaintiffs purchased an additional 20,000 shares of A & Co. ....
After carefully reviewing the foregoing paragraphs, we agree with appellees that these counts, as set forth in the third amended complaint, do not allege with sufficient particularity facts constituting fraud, as required by the rule and case law. Instead, they merely set forth statements of ultimate fact, i.e., that false statements were made, which probably would have been sufficient had rule 1.110(b), Florida Rules of Criminal Procedure, been applicable. However, when a party alleges fraud, rule 1.120(b) applies, requiring the party to allege more than mere ultimate fact, but to include, in a sense, facts tending to show why the statements were false.[2] Because of the damage to reputations and good will which may result from a charge of fraud, a complaint alleging common law fraud, and violations of section 517.211 must satisfy the particularity requirement of rule 1.120(b). But cf., Raymond, James & Associates v. Zumstorchen Investment, Ltd., 488 So.2d 843 (Fla. 2d DCA 1986) (short statements of ultimate fact were held sufficient to state a cause of action for violation of chapter 517, and common law fraud). Accordingly, we affirm the dismissal as to E.W. & Co. of counts V, VI, and IX.
Turning to the dismissal of count VII as it relates to appellees, we again affirm. Count VII alleges that appellees violated chapter 895, Florida's RICO Act. Appellants maintain that the conduct alleged in count VII establishes the "pattern of racketeering activity" requisite to a finding of a violation of section 895.03, comparing this cause to the circumstances in Banderas v. Banco Centro del Ecuador, 461 So.2d 265 (Fla. 3d DCA 1985). However, we must agree with appellees that the allegations in count VII at best establish as to appellees an isolated incident of an improper audit of financial statements. This is to be distinguished from the level of racketeering involved in Banderas characterized as "a well organized, ongoing, systematic, *389 criminal scheme devised by appellants to defraud the government of Ecuador... ." Id., at 270.
We must also affirm the dismissal of count X alleging negligence on the part of E.W. & Co. Although appellants have strenuously argued in favor of this Court's abandoning the privity requirement in the area of suits filed against certified public accountants, citing as persuasive authority an erudite opinion from a California appellate court in International Mortgage Company v. John P. Butler Accountancy Corporation, 177 Cal. App.3d 806, 223 Cal. Rptr. 218 (Cal. App. 4 Dist. 1986), we decline to do so. Florida law denies relief for a breach of due care by an accountant to third parties who are not in privity with that accountant, even though reliance by the third parties is known or anticipated. See Investors Tax Sheltered Real Estate, Ltd. v. Laventhol, Krekstein, Horwath & Horwath, 370 So.2d 815 (Fla. 3d DCA 1979), cert. denied, 381 So.2d 767 (Fla. 1980); Investment Corporation of Florida v. Buchman, 208 So.2d 291 (Fla. 2d DCA), cert. dismissed, 216 So.2d 748 (Fla. 1968); Nortek, Inc. v. Alexander Grant & Company, 532 F.2d 1013 (5th Cir.1976).[3] The Supreme Court has modified the privity principle only slightly and only as to abstractors in First American Title Insurance Company, Inc. v. First Title Service Co., 457 So.2d 467 (Fla. 1984), wherein it held that where an abstractor knows, or should know, that his customer wants the abstract for the use of a prospective purchaser, and the prospect purchases the land relying on the abstract, the abstractor's duty of care runs not only to his customer but to the purchaser as well. See also A.R. Moyer, Inc. v. Graham, 285 So.2d 397 (Fla. 1973) (contractor may bring suit for negligence against architect although contractor not in privity with architect, supreme court applying products-liability tort principles to negligent provision of professional services). However, in First American Title, the supreme court was "highly" persuaded by Justice Cardozo's seminal decision in Ultramares Corporation v. Touche, 255 N.Y. 170, 174 N.E. 441 (1931), wherein he reasoned:
If liability [to third parties] for negligence exists, a thoughtless slip or blunder, the failure to detect a theft of forgery beneath the cover of deceptive entries, may expose accountants to liability in an indeterminate amount for an indeterminate time to an indeterminate class. The hazards of a business conducted on these terms are so extreme as to enkindle doubt whether a flaw may not exist in the implication of a duty that exposes to these consequences. [Citation omitted.]
First American Title, 457 So.2d at 472. Consequently, the supreme court declined "the petitioner's invitation to approve a completely open-ended kind of abstractor's liability based on a duty of care to any and all persons who might foreseeably use and rely on the abstract." Id., at 471.
In the instant case, taking as true, as we must, those facts alleged in count X, appellees knew that the financial statements and reports would be delivered and relied upon by those who were considering investing in A.T. Bliss & Company. Had appellees been abstractors, that allegation might have been sufficient to withstand a motion to dismiss on the basis of First American Title, but we deal here with accountants, and the specter of worldwide liability for that professional group compels us to adhere to the rule set forth in Investment Corp. of Florida v. Buchman, that an accountant is not liable to persons with whom there is no privity of contract.[4] However, due to the public policy implications of this issue, we certify the following as a question of great public importance:
WHERE AN ACCOUNTANT NEGLIGENTLY FAILS TO EXERCISE REASONABLE *390 AND ORDINARY CARE IN AUDITING AND EXAMINING THE BOOKS AND RECORDS OF HIS CLIENT, AND THEREFORE, DOES NOT PREPARE ACCURATE STATEMENTS OF THE FINANCIAL CONDITIONS OF HIS CLIENT, AND WHERE THE ACCOUNTANT KNEW THAT THE FINANCIAL STATEMENTS AND REPORTS WOULD BE DELIVERED TO AND RELIED UPON, AND WERE RELIED UPON, BY THIRD PARTIES CONSIDERING INVESTING IN THE CLIENT, IS THE ACCOUNTANT LIABLE TO THOSE THIRD PARTIES FOR HIS NEGLIGENCE, DESPITE A LACK OF PRIVITY BETWEEN THE ACCOUNTANT AND THE THIRD PARTIES?
Finally, we affirm in part and reverse in part the trial court's refusal to grant appellants leave to further amend. It is apparent that since the motion to dismiss the amended complaint, appellants have known of the deficiencies in their allegations that appellees violated chapters 517 and 895. Moreover, because of our holding as to count X, appellants will be unable to state a cause of action as to negligence. Consequently, the trial court did not abuse its discretion in dismissing those counts with prejudice. However, count IX was not added by appellants until the third amended complaint presently under review. Accordingly, it was an abuse of discretion for the trial court to deny appellants at least one chance to amend that count. Dingess v. Florida Aircraft Sales and Leasing, Inc., 442 So.2d 431 (Fla. 5th DCA 1983); Townsend v. Ward, 429 So.2d 404 (Fla. 1st DCA 1983). Consequently, we reverse and remand for further proceedings.
AFFIRMED, in part, REVERSED, in part, and REMANDED for further proceedings.
FRANK, RICHARD H., Associate Judge, concurs.
ERVIN, J., concurs and dissents with written opinion.
ERVIN, Judge, concurring and dissenting.
I fully concur with the majority's disposition of all counts of the complaint, except as it relates to Counts V, VI, IX and X. Although I would affirm Counts V and VI, my reasons are somewhat different from those stated by the majority's opinion, which finds the allegations of Counts V and VI are deficient in failing to satisfy the particularity requirement of Florida Rule of Civil Procedure 1.120(b). Although I consider that the allegations comply sufficiently with the rule, I would affirm on the ground that those counts  relating as they do to claims under Chapter 517, Florida Statutes, pertaining to the sale of securities  do not state a cause of action, in that appellees are not alleged to be the sellers of securities or to have participated in the sale of same. I agree with persuasive federal case law authority that there must be some demonstration that the defendant was the proximate cause of the sale. See Croy v. Campbell, 624 F.2d 709, 713 (5th Cir.1980); Lewis v. Walston & Company, 487 F.2d 617 (5th Cir.1973). There being none in the complaint before us, I agree to the counts' dismissal.
I respectfully dissent to the dismissal of Count IX, which, in my judgment, meets the particularity test, required by Florida Rule of Civil Procedure 1.120(b), of actions sounding in fraud. In order to meet that test, the plaintiff must allege with specificity the facts and circumstances constituting the fraud, as well as all of the essential elements of the conduct, i.e., plaintiff's reliance to his detriment on a false statement concerning a material fact, made with the knowledge of its falsity and an intent to induce reliance. See Raymond, James & Associates v. Zumstorchen Investment, Ltd., 488 So.2d 843 (Fla. 2d DCA 1986); Schryburt v. Olesen, 475 So.2d 715 (Fla. 2d DCA 1985); Rubens v. Glinsky, 473 So.2d 20 (Fla. 3d DCA 1985). For example, in Peninsular Florida District Council of Assemblies of God v. Pan American Investment and Development Corp., 450 So.2d 1231 (Fla. 4th DCA 1984), a complaint *391 was held to have satisfied the particularity test by alleging that an agent of the defendant made false representations regarding the boundary of certain real estate which it sold to the plaintiff; that the principal corroborated the false representations of its agent by furnishing plaintiff with an inaccurate drawing prepared by its president with knowledge of its falsity and with an intent that plaintiff would rely upon it; and that plaintiff reasonably relied upon the false representations to his detriment and suffered resulting damages. Again, in Rubens v. Glinsky, the Third District Court of Appeal, while commenting that the complaint before it was "not a model of craftsmanship", nevertheless held that it adequately alleged the elements of a cause of action for fraudulent misrepresentation in alleging:
(a) the misrepresentation of a material fact (the concealment of a negative roof inspection report and the presentation of a favorable one so as to represent that the roof was in good condition); (b) that the defendants knew the falsity of the representation; (c) that the defendants made the representation intending that the plaintiffs would rely on it in purchasing the house; (d) that the plaintiffs did rely on the representation in purchasing the house; and (e) that the plaintiff's reliance caused damage.
473 So.2d at 20.
In my judgment all of the allegations necessary to state a cause of action in common law fraud are present in the complaint now on review. As reflected by the facts recited in the majority's opinion at pages 387-388, ante, appellants alleged in Count IX that a false representation was made by Etue, Wardlaw & Company (E.W. & Co.), during its assistance to the client in the preparation of an offering memorandum, made for the purpose of inducing appellants to invest in the client's business, ASA. The false statements included material amounts of revenue that had not been collected, as well as the use of methods that were not in accordance with generally accepted accounting methods, resulting in the reporting of earnings materially in excess of the actual earnings of ASA. The above allegations go to both falsity and representation, thereby satisfying with particularity the first two elements of fraud.
Insofar as the satisfaction of the remaining two elements of common law fraud, i.e., plaintiffs' reliance on the false representations to their detriment, paragraph 41 of the complaint alleges that plaintiffs, as a result of the false representations, entered into an agreement to purchase and did purchase a limited partnership unit in ASA. Paragraph 104 of Count IX alleges that following the purchase of the partnership unit, made in reliance on E.W. & Co.'s misrepresentations, plaintiffs were damaged as a result of the decline in value of the limited partnership. I would therefore reverse outright the lower court's dismissal of Count IX, sounding in common law fraud.
I would also reverse that portion of the order dismissing Count X, seeking damages caused by the defendant's negligence. The Florida Supreme Court has never addressed the precise question for us: Whether an independent public accountant, that knew, or with reason should have known, that the financial statements and reports it made of the financial conditions of its client would be delivered to and relied upon by third parties investing in the business of the client, should be liable to such third parties for injuries caused by the accountant's negligence, notwithstanding a lack of privity between the accountant and the third parties? The majority instead is persuaded by the rule of nonliability espoused in the opinions of two other district courts of appeal: Investors Tax Sheltered Real Estate, Ltd. v. Laventhol, Krekstein, Horwath & Horwath, 370 So.2d 815 (Fla. 3d DCA 1979), cert. denied, 381 So.2d 767 (Fla. 1980); Investment Corporation of Florida v. Buchman, 208 So.2d 291 (Fla. 2d DCA), cert. dismissed, 216 So.2d 748 (Fla. 1968). Investors relied upon Buchman and Buchman in turn relied upon Sickler v. Indian River Abstract & Guaranty Co., 142 Fla. 528, 195 So. 195, 198 (1940), which absolved an abstracter from liability in negligence who did not act in privity with the injured party. The Sickler rule was substantially modified by the Florida Supreme Court's later opinion in First American Title Insurance Co. v. First *392 Title Service Co., 457 So.2d 467 (Fla. 1984), which subjected a negligent abstracter to liability even in the absence of privity, on the ground that the abstracter should have reasonably foreseen that the party injured might rely on the abstract:
Where the abstracter knows, or should know, that his customer wants the abstract for the use of a prospective purchaser and the prospect purchases the land relying on the abstract, the abstracter's duty of care runs ... not only to his customer but to the purchaser. Moreover, others involved in the transaction through their relationship to the purchaser  such as lender-mortgagees, tenants and title insurers  will also be protected where the purchaser's reliance was known or should have been known to the abstracter.
457 So.2d at 473.
The discarding of the privity barrier in favor of a foreseeability analysis is altogether suitable in view of the allegations in the complaint before us. Count X alleges that the defendant, E.W. & Co., knew that the financial reports and statements that it had negligently prepared would be delivered to and relied upon persons such as appellants who were considering investing in the company of the audited client.
First Title American Insurance Company's rule of reasonable foreseeability, as applied to abstracters, corresponds almost exactly with that applied by the California Court of Appeals for the Fourth District in International Mortgage Co. v. John P. Butler Accountancy Corporation, 177 Cal. App.3d 806, 223 Cal. Rptr. 218 (1986), as to independent public accountants. In holding that an independent certified public accountant was answerable in an action in negligence, filed by a party with whom the accountant had no privity, the court recognized that the independent accountant was employed to analyze his client's financial status and to make public his findings in accordance with generally accepted accounting principles; that the findings in the accountant's financial statement are imbued with a public trust, in that the accountant knew or with reason should know that his statement would be relied upon by an investor or by anyone involved in the financial concerns of the audited client. Thus, by applying a foreseeability standard, the California appeals court concluded that the accountant could be liable to those third persons who reasonably and foreseeably relied upon the audited statements. In the present case, it is immaterial whether E.W. & Co., in preparing the offering, may have been unaware of the identity of the persons subsequently injured. If the public accountant was, during the time of its negligent acts, reasonably aware that persons such as appellants would rely on the financial statement in order to assist them in deciding whether to invest in the business of the audited client, the accountant should be subjected to liability in negligence, regardless of whether there was a contractual relationship between the accountant and the injured person.
Other courts have also imposed liability upon public accountants through the use of a foreseeability analysis. See H. Rosenblum, Inc. v. Adler, 93 N.J. 324, 461 A.2d 138 (1983); Citizens State Bank v. Timm, Schmidt & Co., 113 Wis.2d 376, 335 N.W.2d 361 (1983). See also Annot., 46 A.L.R.3d 979, 989-996 (1972). Imposition of liability upon a public accountant, resulting from his negligent injury to third persons in preparing financial statements, based upon the test of foreseeability, is a simple recognition of the principle that the foundation of liability for negligence is knowledge, actual or constructive, of the peril that subsequently results in injury.[1] Thus, before any person may be found to be negligent, it must appear that such person had knowledge, or by the exercise of reasonable diligence would have had knowledge, that his act or omission was likely to result in injury to another. Lindsay v. Thomas, 128 Fla. 293, 174 So. 418 (1937).
I fail to understand any compelling policy reason why a public accountant, not in contractual privity with the injured party, should any more be exempted from liability in negligence than should an abstracter, a *393 manufacturer of a defective product, West v. Caterpillar Tractor Co., 336 So.2d 80 (Fla. 1976); or an architect, A.R. Moyer, Inc. v. Graham, 285 So.2d 397 (Fla. 1973). As was observed in International Mortgage Co., "It is only reasonable that the same judicial criteria govern the imposition of negligence liability, regardless of the defendant's profession." 223 Cal. Rptr. at 226.
Since Justice Cardozo's seminal decision in McPherson v. Buick Motor Co., 217 N.Y. 382, 111 N.E. 1050 (1916), was announced, the foundations supporting the citadel of privity have been seriously eroded. It is time now to reexamine carefully all privity barriers, particularly those judicially erected to exempt independent public accountants from liability.
NOTES
[1] Apparently, appellants have abandoned any challenge to the dismissal of count II, as no point addresses the propriety of the dismissal of that count in their brief.
[2] In that regard, the drafting of paragraph 38(a) would be seen to have satisfied the pleading burden imposed by the rule, insofar as it sufficiently informs the defendant as to why the financial statements were materially false and misleading, viz, because they included amounts of revenues which had not been collected. (However, the whole of count IX cannot be supported by that sole paragraph.)
[3] Compare Dantzler Lumber & Export Co. v. Columbia Casualty Co., 115 Fla. 541, 156 So. 116 (1934), wherein the supreme court held that a bill of complaint contained sufficient allegations to show that the insurer had the right to be subrogated pro tanto to any right of action which the insured may have had against its accountant, whose alleged wrongful act or negligence caused the loss.
[4] We note that presently pending before the supreme court is the question of whether an attorney may be sued for negligence absent privity. See Oberon Investments, N.V. v. Angel, Cohen and Rogovin, 492 So.2d 1113 (Fla. 3d DCA 1986), review granted, Case No. 69,398 (Fla. Feb. 6, 1987).
[1] The rule of reasonable foreseeability is consistent with the position advocated by the following comment:

[I]t is submitted that public policy would best be served by imposing on accountants liability in neligence to reliant third parties, but limiting the bounds of liability to a group more restricted than that of all persons foreseeably injured. The most appropriate element of actionable negligence with which to achieve this aim seems to be that of duty.
46 A.L.R.3d at 984.