541 So.2d 155 (1989)
FIRST FLORIDA BANK, N.A., F/K/a First National Bank of Florida, Appellant,
v.
MAX MITCHELL & COMPANY, P.A., and Max W. Mitchell, Appellees.
No. 88-01128.
District Court of Appeal of Florida, Second District.
April 5, 1989.
Robert W. Clark and Lucinda P. Burwell of Macfarlane, Ferguson, Allison & Kelly, Tampa, for appellant.
John N. Jenkins and Jeffrey L. Cohen of Marlow, Shofi, Smith, Hennen, Smith & Jenkins, P.A., Tampa, for appellees.
HALL, Judge.
The appellant, First Florida Bank, appeals a summary judgment granted the appellees, Max Mitchell & Company, P.A., an accounting firm, and Max W. Mitchell. We are again faced with the issue of whether an accountant can be held liable in negligence to a third party in the absence of privity of contract, even though reliance by the third party is known or anticipated by the accountant and the acts complained of may have amounted to gross negligence. As we did in Investment Corp. v. Buchman, 208 So.2d 291 (Fla. 2d DCA), cert. dismissed, 216 So.2d 748 (Fla. 1968), we hold that in the absence of privity there can be no liability on the part of an accountant for even gross negligence, unless it amounts to fraud, despite the fact that the accountant knew of the reliance by a third party.
Max W. Mitchell went to First Florida requesting a line of credit for C.M. Systems, Inc., one of his clients. Mitchell informed Stephen Hickman, a vice president of First Florida, that he was a certified public accountant and he delivered to Hickman unqualified, audited financial statements that indicated that C.M. Systems had total assets of $3,474,336 and a total indebtedness of $1,296,823. The statements did not indicate that C.M. Systems owed money to any bank and Mitchell stated that as of that month C.M. Systems was not indebted to any bank. In reliance upon the representations made to it by Mitchell and upon the information contained in the audited financial statements First Florida approved the loan request and issued a line of credit to C.M. Systems in *156 the amount of $500,000. C.M. Systems thereafter borrowed the entire amount of the line of credit and defaulted on the loan. First Florida then discovered that the audited financial statements prepared and delivered to it by Mitchell overstated assets and net income and understated liabilities. In addition, First Florida discovered that C.M. Systems owed substantial amounts of money to other banks.
First Florida filed a three-count complaint against the appellees in which it alleged negligence, gross negligence, and fraud. The appellees filed a motion for summary judgment as to the counts for negligence and gross negligence. The motion was granted by the trial court on the basis of Gordon v. Etue, Wardlaw & Co., P.A., 511 So.2d 384 (Fla. 1st DCA 1987). The issue of fraud was not considered in the instant appeal, as First Florida voluntarily dismissed the fraud count.
Gordon involved an action for, inter alia, negligence against certified public accountants. The First District, citing Buchman, and declaring that it would adhere to that case, stated that "Florida law denies relief for a breach of due care by an accountant to third parties who are not in privity with that accountant, even though reliance by the third parties is known or anticipated." Gordon, 511 So.2d at 389.
Buchman involved an investment company that relied upon the uncertified financial statements prepared by certified public accountants in purchasing an interest in the Belcher-Young Company. Belcher-Young failed financially and the investors received nothing on their stock. The investors then sued the accountants and were allowed to go to the jury on fraud and third party beneficiary theories. Based on the jury verdicts, final judgments were entered in favor of the accountants. The investment company contended on appeal that the trial court erred in dismissing its count for negligence in the preparation of the financial statements. This court framed the issue on appeal as "in the absence of fraud, are certified public accountants liable to a known third party for negligence in the preparation of a certified financial statement when the certified public accountants had knowledge, at the time of preparation, that the third party intended to rely on the statement." Buchman, 208 So.2d at 293-294. It then discussed Ultramares Corp. v. Touche, 255 N.Y. 170, 174 N.E. 441 (1931), and Glanzer v. Shepard, 233 N.Y. 236, 135 N.E. 275 (1922).
In Ultramares the New York Court of Appeals held that recovery may not be had against an accountant for negligence or even gross negligence in the absence of privity of contract. However, the New York court did hold that under such circumstances recovery could be had against an accountant for fraud because "negligence or blindness, even when not equivalent to fraud, is none the less [sic] evidence to sustain an inference of fraud." Ultramares, 174 N.E. at 449. In Glanzer, the New York Court of Appeals held that a public weigher was liable to the buyer of beans for the amount the buyer overpaid the seller in reliance on the weigher's certificate of weight of the beans because the buyer's "use of the certificates was not an indirect or collateral consequence of the action of the weigher. It was a consequence which, to the weigher's knowledge, was the end and aim of the transaction." Glanzer, 135 N.E. at 275. The New York court distinguished Glanzer in its Ultramares opinion on the basis of the relationships between the parties of the two actions: "The bond [between the weigher and the buyer in Glanzer] was so close as to approach that of privity, if not completely one with it. Not so in the case at hand. No one would be likely to urge that there was a contractual relation, or even one approaching it, at the root of any duty that was owing from the defendants now before us to the indeterminate class of persons who, presently or in the future, might deal with the Stern Company in reliance on the audit. In a word, the service rendered by the defendant in Glanzer v. Shepard was primarily for the information of a third person, in effect, if not in name, a party to the contract, and only incidentally for that of the formal promisee." Ultramares, 174 N.E. at 445.
The Buchman court concluded that the investors failed to allege facts to which Glanzer would be applicable. Rather, it *157 held that on the basis of Sickler v. Indian River Abstract & Guaranty Co., 142 Fla. 528, 195 So. 195 (1940), the trial court correctly ruled that the investment company failed to state a cause of action for negligence. In Sickler it was held that an abstracter is not liable in negligence in the absence of privity of contract.
In this appeal, First Florida contends that the trial court erred in granting summary judgment in favor of the appellees because the Florida Supreme Court has abolished the privity requirement. First American Title Insurance Co., Inc. v. The First Title Service Co. of the Florida Keys, Inc., 457 So.2d 467 (Fla. 1984).
First Florida's contention is not quite accurate. In First American, the supreme court did not abolish the privity requirement. Rather, it modified that requirement as it was set forth in Sickler:
When the abstracter knows or should have known, that his customer wants the abstract for the use of a prospective purchaser, and the prospect purchases the land relying on the abstract, the abstracter's duty of care runs, as we have said, not only to his customer but to the purchaser. Moreover, others involved in the transaction through their relationship to the purchaser  such as lender-mortgagees, tenants and title insurers  will also be protected where the purchaser's reliance was known or should have been known to the abstracter.
First American, 457 So.2d at 473. However, the court declined to impose a duty of care on abstracters in favor of all who might foreseeably use and rely on their abstracts because, unlike consumers of products who have no alternative but to rely on the manufacturers of those products with regard to the fitness thereof, prospective purchasers of real estate can order their own abstract and title opinions rather than rely on those of the seller or previous owners.
While the application of the strict privity doctrine to accountants could be based on the fact that a third party has the option of ordering his own financial statements rather than relying on those of an accountant with whom he is not in privity, a modification of the doctrine, such as was made with regard to its application to abstracters, may be justified where the accountant knows that the third party is going to act in reliance on the financial statements he has prepared. Nevertheless, because Florida law denies relief against an accountant for negligence or gross negligence, Buchman, Gordon, we must affirm the trial court's granting of summary judgment in favor of the appellees. However, due to the public policy implications of this issue and the erosion of the strict privity doctrine in such areas as abstracters' liability, First American, products liability, MacPherson v. Buick Motor Co., 217 N.Y. 382, 111 N.E. 1050 (1916), and attorneys' liability where it was the apparent intent of the client to benefit a third person, Lorraine v. Grover, Ciment, Weinstein & Stauber, P.A., 467 So.2d 315 (Fla. 3d DCA 1985), we certify the following as a question of great public importance:
WHERE AN ACCOUNTANT FAILS TO EXERCISE REASONABLE AND ORDINARY CARE IN PREPARING THE FINANCIAL STATEMENTS OF HIS CLIENT AND WHERE THAT ACCOUNTANT PERSONALLY DELIVERS AND PRESENTS THE STATEMENTS TO A THIRD PARTY TO INDUCE THAT THIRD PARTY TO LOAN TO OR INVEST IN THE CLIENT, KNOWING THAT THE STATEMENTS WILL BE RELIED UPON BY THE THIRD PARTY IN LOANING TO OR INVESTING IN THE CLIENT, IS THE ACCOUNTANT LIABLE TO THE THIRD PARTY IN NEGLIGENCE FOR THE DAMAGES THE THIRD PARTY SUFFERS AS A RESULT OF THE ACCOUNTANT'S FAILURE TO USE REASONABLE AND ORDINARY CARE IN PREPARING THE FINANCIAL STATEMENTS, DESPITE A LACK OF PRIVITY BETWEEN THE ACCOUNTANT AND THE THIRD PARTY?
LEHAN, A.C.J., and PATTERSON, J., concur.